James E. Holland, Jr. (021826)
Javier Torres (032397)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email:  james.holland@stinson.com
        javier.torres@stinson.com
Attorneys for HKB, Inc., dba Southwest Industrial Rigging

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| HKB, INC., an Arizona corporation, doing business as SOUTHWEST INDUSTRIAL RIGGING,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES FOR THE SOUTHWEST CARPENTER'S SOUTHWEST TRUST; CARPENTERS SOUTHWEST ADMINISTRATIVE CORP.,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff HKB, Inc., and Arizona corporation doing business as Southwest Industrial Rigging alleges:

## PARTIES AND JURISDICTION

1.  Plaintiff is a corporation duly incorporated under the laws of the State of Arizona, with its principal place of business at 2802 W Palm Ln, Phoenix, AZ 85009.

2.  Upon information and belief, Defendant Carpenters Southwest Administrative Corporation is a California corporation.

3.  Upon information and belief, Defendant Board of Trustees for the Carpenters Southwest Trusts is acting trustee for the Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund.

CORE/3008422.0002/129739210.1

4. An actual and justiciable controversy exists between Plaintiff and Defendants. Defendants have, through multiple letters, asserted that Plaintiff owes Defendants an amount exceeding $493,643; Defendants claim this amount is owed by Plaintiff to Defendants pursuant to a purported contract which is unenforceable against Plaintiff.

5. This case seeks a declaratory judgment under 28 U.S. Code § 2201.

6. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

7. Upon information and belief, Southwest Regional Council of Carpenters (the "Union") is an unincorporated voluntary association and labor organization with offices in Phoenix, Los Angeles, Reno, Las Vegas, Salt Lake City, Albuquerque, and Denver.

8. On August 22, 2013, Tom Allen and the Union signed a document titled "Southwest Regional Council of Carpenters – Carpenters Memorandum Agreement 2012-2016" (the "Memorandum").

9. The Memorandum purported to specify certain conditions regarding Plaintiff hiring Union workers.

10. At the time Allen signed the Memorandum, Allen was an employee of Plaintiff, but Allen did not have authority to sign such documents for Plaintiff.

11. Prior to Allen's signing of the Memorandum, Plaintiff made it known to Allen that Allen did not have authority to bind Plaintiff by signing any such contracts on behalf of Plaintiff.

12. Allen was only a salesman for Plaintiff, so the Union had no reason to believe that Alley was authorized to sign the Memorandum.

13. Subsequent to Allen's signing of the Memorandum, and still unaware that Allen had signed the Memorandum, Plaintiff reiterated to Allen that Allen did not have

CORE/3008422.0002/129739210.1

2

authority to bind Plaintiff by signing such contracts on Plaintiff's behalf.

14. The Memorandum purports to incorporate, by reference, other documents (referred to in the Memorandum as "Agreement[s]" and "Master Labor Agreement[s]"), and purported to include "any amendments modifications, and extensions" of such documents. Upon information and belief, these documents were never provided to Allen, nor were they provided to Plaintiff.

15. Plaintiff performs construction-related maintenance and repair work at the Palo Verde Nuclear Generating Station (the "Power Plant") twice a year for 4-6 weeks at a time.

16. Plaintiff had previously used carpenters provided by the Union to help perform some of the maintenance and repair work at the Power Plant, but Plaintiff had never been required to sign the Memorandum or any document like it.

17. Subsequent to Allen's signing of the Memorandum, and while Plaintiff was still unaware that Allen had signed the Memorandum, Plaintiff used carpenters provided by the Union to perform temp work at the Power Plant.

18. Consistent with past practices, Plaintiff paid Defendants for all services there were rendered by the carpenters, including funds for the carpenters' health-care, training, vacation, and pension funds.

19. Beginning in November, 2015—several years after Plaintiff first began hiring and paying for services provided by Union's carpenters (and more than two years after Allen signed the Memorandum)—Defendants purported to perform an "audit" regarding Plaintiff's payments to Defendants.

20. As a result of Defendant's "audit," the Defendants demanded that Plaintiff make additional payments in excess of $490,000, for various health-care, training, vacation, and pension funds. This payment demand was not based upon any work performed by the Union's carpenters. Rather, the Defendants' demand was based solely upon services performed by the Plaintiff's own employees.

CORE/3008422.0002/129739210.1

3

21. Plaintiff's employees were not members of the Union and had no affiliation with the Union. Nevertheless, the Defendants claimed that one of the documents incorporated into the Memorandum says Plaintiff must pay the Defendants' health-care, training, vacation, and pension funds for all work performed by Plaintiff's employees even though the employees are not Union members and do not receive Union benefits. In other words, Defendants claim that because Plaintiff hired Union carpenters for temporary work at the Power Plant, Plaintiff is required to pay Defendants' health-care, training, vacation, and pension funds for all work performed year round by Plaintiff's non-union employees.

22. Neither Plaintiff nor Plaintiff's employees will receive any benefit from the health-care, training, pension, and vacation plans that Defendants claim Plaintiff must pay for.

23. During the time that Plaintiff used carpenters provided by the Union, Defendants never brought to Plaintiff's attention any expectation that Plaintiff was liable for any of the payments that Defendants ultimately demanded as a result of the "audits."

24. The Defendants' demand by itself actually exceeds the value of all services provided by the Union carpenters for that time period. Thus, the purported obligation to pay health-care, training, vacation, and pension plans for all Plaintiff's employees actually compounds Plaintiff's costs for Union workers by multiples, making it so that Union carpenters cost far more than they are worth.

25. Plaintiff has fully paid Defendants for all sums attributable to work performed by Union carpenters, so Plaintiff owes no other money to Defendants.

## FIRST CLAIM

## NO CONTRACT (LACK OF AUTHORITY)

26. Plaintiff reincorporates all other paragraphs as if fully set forth herein.

27. Allen did not have authority to execute the Memorandum on Plaintiff's

CORE/3008422.0002/129739210.1

4

1 behalf.

2 28. Because Allen did not have authority to bind Plaintiff, Plaintiff is not 3 bound by the terms of the Memorandum, and the Memorandum is not enforceable 4 against Plaintiff.

5 29. To the extent Plaintiff and Defendants engaged in a course of business, 6 this course of business did not include any obligation for Plaintiff to pay defendants for 7 health-care, training vacation, or pension benefits for Plaintiff's employees.

8 30. Plaintiffs have fully paid Defendants all sums they are entitled, and 9 Plaintiffs owe no other money to Defendants.

## SECOND CLAIM

## DOCTRINE OF REASONABLE EXPECTATIONS

12 31. Plaintiff reincorporates all other paragraphs as if fully set forth herein.

13 32. Contracts (particularly boilerplate contracts) are enforceable only to the 14 extent of the reasonable expectations of the contracting parties.

15 33. Plaintiff never expected that by hiring Union contractors for temporary 16 work at the Power Plant Plaintiff would be required to pay Defendants' health-care, 17 training, vacation, and pension funds for all work performed year round by Plaintiff's 18 full-time permanent employees.

19 34. Even if the Memorandum is partially enforceable, Plaintiff did not have a 20 reasonable expectation that it would be liable for the $490,000 in payments which 21 Defendants claim is owed by Plaintiff.

22 35. Additionally, the course of business between Plaintiff and Defendants—in 23 which Plaintiff had used Union carpenters for years without Defendants making 24 additional demands for payments—demonstrates that Plaintiff did not reasonably expect 25 to be liable for the approximately $490,000 in payments which Defendants now claim is 26 owed under the Memorandum.

27 36. Plaintiff did not know that Defendants claimed they were entitled to be

28 CORE/3008422.0002/129739210.1

5

1 paid health-care, training, vacation, and pension funds for all work performed by
2 Plaintiff's full-time permanent employees until after the Union carpenter's work was
3 completed.

4     37. After Defendants made their demand, Plaintiff stopped using the Union's
5 carpenters for any work, and Plaintiff has not used them since.

## THIRD CLAIM

## DEFENDANTS' CLAIM IS TIME BARRED

8     38. Plaintiff reincorporates all other paragraphs as if fully set forth herein.

9     39. Defendants' claim, which seeks compensation for the Union workers'
10 services, arises out of the employment by Plaintiff.

11     40. Arizona's statute of limitations pertaining to employment claims says,
12 "There shall be commenced and prosecuted within one year after the cause of action
13 accrues, and not afterward, the following actions . . . [f]or breach of an oral or written
14 employment contract." A.R.S. § 12-541.

15     41. The Memorandum was signed by Allen and Defendants on August 22,
16 2013.

17     42. Immediately thereafter, Plaintiff utilized Union carpenters at the Power
18 Plant. Plaintiff promptly paid Defendants for all services performed by the Union
19 carpenters, including payments for their health-care, training, vacation, and pension
20 funds.

21     43. The Defendants knew that Plaintiff employed several permanent
22 employees who would purportedly trigger Defendants' claim for health-care, training,
23 vacation, and pension funds. Nevertheless, Plaintiff did not pay the Defendants for any
24 work attributable to Plaintiff's full-time permanent employees.

25     44. Thus, the Defendants have known or should have known for at least three
26 years that Plaintiff was not paying the sums that Defendants claim Plaintiff owed under
27 the Memorandum.

28 CORE/3008422.0002/129739210.1

6

45. Defendants' claims are barred under A.R.S. § 12-541.

**REMEDIES**

Plaintiff seeks the following remedies:

1. Declare that the Memorandum and its accompanying documents are not enforceable against Plaintiff because Plaintiff did not agree to the terms in the Memorandum.

2. Declare that the Memorandum's purported requirement for Plaintiff to pay Defendants' health-care, training, vacation, and pension funds for work performed by Plaintiff's full-time permanent employees is unenforceable because it exceeds the Plaintiff's reasonable expectations.

3. Declare that Plaintiff has no present or future obligations under the Memorandum.

4. Declare that Defendants' claim is barred by Arizona's statute of limitation.

5. Award Plaintiff's attorney fees and costs as permitted by law, including A.R.S. § 12-341.01.

RESPECTFULLY SUBMITTED this  2nd  day of November 2016.

          **STINSON LEONARD STREET LLP**

By:  /s/ James E. Holland, Jr.
       James E. Holland
       Javier Torres
       1850 North Central Avenue, Suite 2100
       Phoenix, Arizona 85004-4584
       Attorneys for Southwest Industrial Rigging

CORE/3008422.0002/129739210.1