DANIEL SHANLEY (021322)
Email Address: dshanley@deconsel.com
DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Telecopier (213) 488-4180

ATTORNEYS FOR DEFENDANTS, CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| H K B Inc., an Arizona corporation, doing business as SOUTHWEST INDUSTRIAL RIGGING<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, erroneously sued as BOARD OF TRUSTEES FOR THE SOUTHWEST CARPENTER'S SOUTHWEST TRUST; CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation;<br><br>Defendants. | CASE NO. 2:16-cv-03799-DJH<br><br>DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(3), (6), (7), OR, IN THE ALTERNATIVE, TO STAY ACTION |

Defendants, BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, erroneously sued as BOARD OF TRUSTEES FOR THE SOUTHWEST CARPENTER'S SOUTHWEST TRUSTS ("Board") , and CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION ("CSAC", collectively referred to as "Defendants") hereby submit this Motion To Dismiss pursuant to FRCP 12(b)(3), (6), (7), or, in the Alternative, to Stay This Action.

## I. INTRODUCTION

Before filing this action, Plaintiff was already being sued by Defendants on the same contract it seeks to void here. On October 28, 2016 in the United States District Court for the Central District of California, Defendant sued Plaintiff seeking ERISA benefit contributions owed under the collective bargaining agreement ("CBA") Plaintiff executed with the Southwest Regional Council of Carpenters ("SWRCC") in 2013. Carpenters Southwest Administrative Corporation, et al v. HKB, Inc. et al, No. 2:16-cv-08040-MWF-SK (C.D. Cal. 2016) ("California case"). Plaintiff then filed this suit in Arizona asserting state law defenses to the same CBA.

Plaintiff's suit should be stayed and/or dismissed on the following grounds:

(1) It violates the Ninth Circuit's "first-to-file rule", which mandates that the issues be heard in the California action. See Alltrade, Inc. v. Uniweld Prods., 946 F.2d 622, 628 (9th Cir. 1991).

(2) Plaintiff failed to join the SWRCC, a necessary party under F.R.C.P. Rule 19 to any action seeking to void the contract it entered.

(3) Plaintiff's state law contract claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because federal law controls the interpretation of labor agreements. And,

(4) The forum selection clause under the Trust Agreements mandate all suits be filed in federal or state court in Los Angeles, California.

For any or all of these reasons, Plaintiff's suit should be stayed and/or

dismissed, and re-filed in the pending California action as a compulsory counter-claim.

## II. STATEMENT OF FACTS

Three years ago, on or about August 22, 2013, Plaintiff signed a CBA with the SWRCC. The CBA requires:

> The Contractor agrees to comply with all the terms ... as set forth in the Agreement referred to as the Southern California Carpenters Master Labor Agreement between United General Contractors Association, Inc. ... and the SWRCC and its affiliated Local Unions, United Brotherhood of Carpenters and Joiners of America, dated July 1, 2012, as well as the appropriate Master Agreements covering the States of Nevada, Arizona,... and any extensions, renewals or subsequent Master Labor Agreements ...

CBA, ¶1, Shanley Declaration, Exhibit 1.

Pursuant to the CBA, Plaintiff also became a signatory to the Southwest Carpenters Health and Welfare Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters Training Fund, and the Southwest Carpenters Vacation Trust, along with any amendments to such agreements. Id.

Forum Selection Clauses are set forth in Article V, Section 3 of each of the Trust Agreements. These provide that all lawsuits concerning the validity, enforcement or interpretation of any provisions of the Trust Agreements or any of the collective bargaining agreements with respect to payments due to the Trust Funds are to be held in Los Angeles County, California. Shanley Dec., Ex. 2; Watanabe Dec., ¶2.

These Clauses, which have repeatedly been enforced,[1] were necessary because the SWRCC has Agreements with thousands of employers in seven states including: Southern California, Nevada, Arizona, New Mexico, Colorado, West

---

[1] See, e.g. Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc., No. CV-13-272-MWF (MANx)(C.D. Cal. April 2, 2013); Carpenters Southwest Administrative Corporation v. Advanced Architectural Metals, Inc., No. CV-07-06924 DDP (VBKx)(C.D. Cal. December 22, 2007) (both decisions attached to Shanley Dec., Ex. 7).

Texas, and Utah. See Watanabe Dec., ¶2. The SWRCC's, the Board's and CSAC's offices are all headquartered in Los Angeles. Id., 3. This is where all the trust fund contributions and union dues are paid, where all the trust fund's benefits are administered from, and where all the records are held. Ibid. These factors, including the need to keep administrative costs down, explain why the parties agreed to a Forum Selection Clause requiring litigation to be held in Los Angeles. Ibid.

For the past three years, Plaintiff filed reports with CSAC concerning hours worked by the SWRCC represented carpenters, as required by the agreements. Id., ¶¶5, 6, Ex. 8. Plaintiff also signed up for a program allowing its managers to participate in the SWRCC sponsored benefit plans. Id., ¶¶7, 8, Ex. 9.

CSAC completed an audit of the Plaintiff's contributions to the Trust Funds, which showed that the Plaintiff's Trust Funds contributions were delinquent. Id., ¶ 4. On March 29, 2016, Defendants' counsel sent a demand letter sent to Plaintiff's counsel. Shanley Dec., Ex. 3. On April 27, 2016, Plaintiff's counsel sent letters to Defendants' counsel and to the SWRCC, which, for the first time, asserted that Plaintiff's "former sales representative, Tom Allen, may have signed a document... Mr. Allen did not have actual, implied or apparent authority to bind Southwest Industrial Rigging ..." Shanley Dec., Ex. 4. Plaintiff ignored the three-year delay in bringing up this issue, and ignored that its managers had signed up for a separate program to participate in the benefit plans based upon the agreement signed by Mr. Allen.

Because Plaintiff refused to pay its delinquent ERISA contributions, Defendants filed suit against Plaintiff in the Central District of California on October 28, 2016 in the California case. Shanley Dec., Ex. 5. Defendants seek damages, inter alia, for failure to pay fringe benefit contributions based upon the CBA that Plaintiff entered in August 22, 2013, which incorporated by reference the Trust Agreements. Ibid. In this Complaint, Defendants allege that Plaintiff was

required to pay benefit contributions and that Plaintiff engaged workers who performed services covered by the Agreements. Ibid.

After Defendant filed suit in federal court in Los Angeles County, California, Plaintiff then filed this suit in Arizona. In the Complaint, Plaintiff challenges the CBA on state law grounds and seeks to have the same CBA that is being enforced in the first-filed California declared unenforceable.

## III. ARGUMENT

### A. STANDARDS OF REVIEW

A motion to enforce a forum-selection clause is properly raised through a motion pursuant to FRCP 12(b)(3). Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005). In considering a Rule 12(b)(3) motion, the Court need not accept the pleadings as true, and facts outside the pleadings may properly be considered. Ibid. The same is true with respect to a motion to stay. See, e.g., Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2006).

### B. THE CALIFORNIA CASE WAS FILED FIRST, SO THIS CASE SHOULD BE DISMISSED

"The first-to-file rule was developed to 'serve[] the purpose of promoting efficiency ... and should not be disregarded lightly.'" Alltrade, Inc., 946 F.2d at 625. Thus, it is "imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties." Crawford v. Bell, 599 F.2d 890, 893 (9th Cir. 1979). "Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." Pacesetter Sys. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982). When this happens, the second district court dismisses the second-filed action. Id., at 94.

The first-to-file rule "may be invoked when a complaint involving the same

parties and issues has already been filed in another district." Alltrade, Inc., 946 F.2d at 625.

"Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of the issues." Gunnar Optiks, LLC v. Mad Panda, LLC, 2015 U.S. Dist. LEXIS 28519 at *3 (S.D. Cal. 2015); see also Alltrade, Inc., 946 F.2d at 625.

As mentioned, the California case was filed first on October 28, 2016, whereas this case was filed second on November 2, 2016. The fact that the two cases were filed in close time proximity to each other does not defeat the first-to-file rule. The reasons for the rule are "just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits." Martin v. Graybar Elec. Co., 266 F.2d 202, 205 (7th Cir. 1959), quoting Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474, 475 (3d Cir. 1942). In Gunnar Optiks, the court applied the rule where there was a one day difference in the dates of filing. Id., 2015 U.S. Dist. LEXIS 28519 at *3. In Martin, the court applied the rule where there was a six day difference in filing dates. Id., 130 F.2d at 203. Hence, the first requirement is satisfied here.

As to the second factor, HKB Inc. is the Plaintiff in the present case, and is the Defendant (along with three of its officers) in the California case. The Board and CSAC are the Defendants in this case, and are the Plaintiffs in the California case.

Identical uniformity of parties is not necessary to satisfy this factor, and inclusion of entity officers does not defeat. For instance, in Schwartz v. Frito-Lay N. Am., 2012 U.S. Dist. LEXIS 188186 at *7 (N.D. Cal. 2015), this requirement was satisfied where the plaintiff in the second action would have been a plaintiff in the first-filed class action case. Hence, the inclusion of the officers in the California case does not prevent use of the rule.

Regarding the third factor, similarity of issues, the issues in the two cases are

sufficiently similar to satisfy this requirement. For instance, in Schwartz, supra, 8, while the plaintiff's complaint had "a few additional claims (negligent misrepresentation in addition to intentional misrepresentation, fraudulent concealment, and breach of implied warranty of fitness/purpose)" the court concluded that the claims in both cases were "closely related" and that this requirement was satisfied. Id. Similarly, in Gunnar Optics, supra, 3-4, there was "some difference as to the issues at stake, since the California action does not state a claim for patent infringement while the North Carolina action requests a declaration of Mad Panda's noninfringement of Gunnar's patents and a declaration of their invalidity. Despite their lack of perfect congruity, the two actions need not be identical, but only 'substantially similar' to satisfy the first-to-file rule." Id. In the present matter, both cases result out of the same transaction and involve the same Agreements; hence, they ought to be considered to be sufficiently similar.

The two cases seek different forms of relief in that in the California case, monetary damages are sought, while in this case, Plaintiff requests declaratory relief that the Memorandum is unenforceable. In Pacesetter, the "two actions differ[ed] only as to the remedy sought, and we therefore conclude the first to file rule is applicable." Id., 95-96. Accordingly, the court ought to conclude that this requirement has been met and that this rule applies. Hence, this action ought to be dismissed.

### C. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(7) FOR FAILURE TO JOIN THE SWRCC

The Complaint should be dismissed because the SWRCC is an indispensable party. Plaintiff admits that it was the SWRCC, not the named defendants, that Tom Allen signed an agreement with that is the subject of the lawsuit. Dkt. 1, ¶¶7, 8. In the SWRCC's absence, the agreement it is a signatory to may be held invalid by this Court and this same agreement may be held valid in another forum.

Under Rule 19, an indispensable party is one that is subject to service of

process and whose joinder will not deprive the court of subject-matter jurisdiction if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FRCP 19(a)(1)(B). The SWRCC falls under both descriptions.

The SWRCC, which admittedly operates in Arizona (see Dkt. 1, ¶7), is subject to service of process and its joinder would not affect subject-matter jurisdiction because Plaintiff's allegations against the SWRCC would be the same as against the existing defendants. The SWRCC is interested in the subject of this litigation because it is signatory to the agreement that is the subject of this litigation, which incorporates the Master Labor Agreement. Exhibits 1 (signature page) and 6 to Shanley Declaration. If this Court holds that there is no contract, as Plaintiff alleges, it will be a ruling that the SWRCC and its members will not have the benefit of various provisions, including having the members be hired through the hiring hall. Exhibit 6, Article II.

Additionally, disposing of the action in the absence of the SWRCC may as a practical matter impair or impede the SWRCC's ability to protect the interest of not having a holding against it that there is no contractual relationship between Plaintiff and the SWRCC. Plaintiff's main contention in the Complaint is essentially the reverse of a breach of contract claim, but both types of claims hinge on the question of whether or not there is a contractual relationship. Courts have held that in breach of contract claims, "all parties to the contract are necessary ones." Rojas v. Loewen Group Int'l, 178 FRD 356, 361 (DPR 1998); Acton Co. of Massachusetts v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982)(finding that parent corporation in a breach of contract action was a necessary and indispensable party to the action brought against the subsidiary because the parent corporation signed the

letter of intent and the purchase agreement at issue in the case). Here, too, the signatory to the Memorandum Agreement is an indispensable party that may not defend its interests and counter Plaintiff's allegations about the circumstances under which the contract was signed without being a party to the action.

Further, the SWRCC's absence may leave HKB subject to a substantial risk of incurring inconsistent obligations because of the SWRCC's interest in this action. If this Court holds that there is no contractual relationship, the SWRCC may file a charge with the National Labor Relations Board, which may find that HKB committed an unfair labor practice by unilaterally repudiating the collective bargaining agreement and withdrawing recognition without an election. See e.g., NLRB v. Cornerstone Builders, Inc., 963 F.2d 1075 (8th Cir. 1992)(holding that such conduct violates the Nation Labor Relations Act). Therefore, because of the SWRCC's absence, HKB may be subject to inconsistent determinations with respect to whether there is a contractual relationship.

For the foregoing reasons, the Complaint should be dismissed for failure to join the SWRCC, an indispensable party.

### D. SECTION 301 OF THE LMRA PREEMPTS PLAINTIFF'S STATE LAW CLAIMS

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts any state tort claim that is "inextricably intertwined with consideration of the term of the labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985); see e.g., Dahl v. Rosenfeld, 316 F.3d 1074, 1077-1078 (9th Cir. 2003).

Here, the Second and Third Causes of Action, which presume the existence of a collective bargaining relationship, are inextricably intertwined with consideration of the agreements between the parties. In the Second Cause of Action, Plaintiff claims that it did not have a reasonable expectation that it would be liable for approximately $490,000 in payments, even if the Memorandum Agreement applied.

Dkt. 1, ¶¶ 34-35. This cause of action depends on actually reading and interpreting the agreements that exist between the parties. The Arizona Supreme Court has explained that "the doctrine of reasonable expectations relieves a party from 'certain clauses of an agreement which he did not negotiate, probably did not read, and *probably would not have understood had he read them*.'" Phila. Indem. Ins. Co. v. Barrera, 200 Ariz. 9, 14 (2001)(emphasis added; citing Darner Motor Sales v. Universal Underwriters Ins. Co., 140 Ariz. 383, 394 (1984)). Therefore, this cause of action by its nature is the type that requires reading the relevant portions of an agreement to determine whether the plaintiff would have understood them.

In this case, Plaintiff alleges that it "did not know that Defendants claimed they were entitled to be paid health-care, training, vacation, and pension funds for all work performed by Plaintiff's full-time permanent employees until after the Union carpenter's work was completed." Dkt. 1, ¶ 36. This allegation therefore reveals that this cause of action requires an analysis of the CBA to make a finding as to whether the requirement to pay into the Trust Funds applies even if the work is being performed by Plaintiff's full-time permanent employees, and whether Plaintiff would have understood this to be the case. The Second Cause of Action is therefore preempted by Section 301. Lueck, 471 U.S. at 213.

The Third Cause of Action is also preempted by Section 301. In it, Plaintiff claims that because Defendants knew or should have known for at least three years that Plaintiff was not paying into the Trust Funds for work performed by its own full-time, permanent employees, the demand for payment by Defendants violates A.R.S. § 12-541, which requires that the demand must have been made within one year of when the cause of action accrued. Dkt. 1, ¶¶ 40, 43, 44. The CBA would therefore have to be read and analyzed to determine when the cause of action accrued. For instance, the MLA provides that the contributions "shall be made by each Contractor for each hour worked (or paid for) by all employees employed under the terms of this Agreement." Attachment 1 of MLA at p. 63 (Exhibit 6 to

Shanley Declaration). This is one of the provisions to analyze with respect to whether the cause of action accrued at the time of non-payment, at the time of discovery of non-payment, or another time. The Second and Third Causes of Action therefore are preempted because "[s]ection 301 preempts all state-law causes of action evaluation of which requires interpretation of a labor contract's terms." Miller v. AT & T Network Sys., 850 F.2d 543, 545 (9th Cir. 1988).

**E. THE FORUM SELECTION CLAUSE CONTROLS THE LOCATION WHERE PLAINTIFF'S CLAIMS ARE HEARD**

Plaintiff's Second and Third Causes of Action rest on the assumption that the Memorandum Agreement signed by Tom Allen on August 22, 2013, which incorporates the Master Labor Agreement ("MLA"), does in fact create a contractual relationship between the SWRCC and Plaintiff. See Dkt. 1, ¶¶34, 39-41, 8, 14. In the Second Cause of Action, Plaintiff argues that even if the agreement applies, Plaintiff did not reasonably expect to be liable for the approximately $490,000 in payments which Defendants have demanded. Dkt. 1, ¶ 35. In the Third Cause of Action, Plaintiff contends that even if it owes the SWRCC for workers' services, the demand for payment by the SWRCC is barred by the one-year statute of limitations for breach of an employment contract. Dkt. 1, ¶40.

## IV. CONCLUSION

For the above reasons, the Court should grant Defendant's motion to dismiss.

DATED: November 22, 2016

DeCARLO & SHANLEY
A Professional Corporation

*/s/ Daniel M. Shanley*
Daniel M. Shanley
Attorneys for Defendants CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS

# CERTIFICATE OF SERVICE

**(H K B, Inc., etc., v. Board of Trustees, etc.)**
**(USDC-Arizona Case No. 2:16-cv-03799DJH)**

X I hereby certify that on November 22, 2016, I electronically transmitted the attached document, **Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(3),(6),(7), or, in the Alternative, to Stay Action**, to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

James Edward Holland, Jr. - jholland@stinson.com,cbarajas@stinson.com

X I hereby certify that on November 22, 2016, I served the attached document by U.S. Mail, postage prepaid thereon on the following, who are not registered participants of the CM/ECF System.

Javier Torres
Stinson Leonard Street, LLP - Phoeniz, AZ
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004

Lucy J. Moure-Pasco, Secretary
DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071
Telephone (213) 488-4100
Telecopier (213) 488-4180