DANIEL SHANLEY (021322)
Email Address: dshanley@deconsel.com
DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Telecopier (213) 488-4180

ATTORNEYS FOR DEFENDANTS, CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| H K B Inc., an Arizona corporation, doing business as SOUTHWEST INDUSTRIAL RIGGING<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, erroneously sued as BOARD OF TRUSTEES FOR THE SOUTHWEST CARPENTER'S SOUTHWEST TRUST; CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation;<br><br>Defendants. | CASE NO. 2:16-cv-03799-DJH<br><br>DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR STAY THE ACTION |

**1.   Introduction**

Plaintiff makes six arguments in its Opposition, two of which are irrelevant to the grounds on which the Motion to Dismiss is based. Its first two arguments are that (1) Defendants seek to impose obligations that HKB, Inc. ("HKB" or Plaintiff) never agreed to because the individual who signed the Memorandum Agreement, which incorporates the Trust Agreements and the Master Labor Agreement, did not have authority to bind the company, and (2) HKB never accepted the Trusts' forum-selection clause because it never

ratified the Memorandum Agreement. These arguments are basically arguments in support of the First Cause of Action and in no way address the four grounds for the motion to dismiss.

Plaintiff's other arguments are meritless. It contends that the forum-selection clause violates Arizona public policy as codified in a statute, but that statute is inapplicable to the agreements at issue. Plaintiff also maintains that the first-to-file rule must yield to the doctrine of *forum non conveniens*, but the public interest factors, the only ones that may be considered, weigh in favor of *not* making this exception to the first-to-file rule. Plaintiff's contention that the SWRCC is not an indispensable party rests on the false premise that it has totally assigned its interest in the Memorandum Agreement, and is therefore meritless. Its argument against Section 301 preemption is based on a false characterization of the Second and Third Causes of Action as being federal claims, when nothing in the Complaint indicates they are federal rather than state claims.

For all these reasons, Plaintiff has not presented meritorious arguments, and the Motion to Dismiss should be granted.

**2.   Plaintiff's Arguments That the Memorandum Agreement At Issue Is Unenforceable Fail to Address the Grounds for the Motion to Dismiss**

Plaintiff's first two arguments are irrelevant to what is at issue in this Motion to Dismiss. Defendants here filed a motion to dismiss on various grounds. First, Defendants argued that this action should be dismissed based on the first-to-file rule due to the fact that the California action was filed first, and due to the similarity of the parties and the similarity of the issues. Gunnar Optiks, LLC v. Mad Panda, LLC, 2015 U.S. Dist. LEXIS 28519, *3 (S.D. Cal. 2015); Alltrade, Inc. v. Uniweld Prods., 946 F.2d 622, 628 (9th Cir. 1991). Second, Defendants argued that the Complaint should be dismissed under Rule 12(b)(7) for failure to join an indispensable party, the SWRCC, which is a signatory to the Memorandum Agreement at issue.

Third, Defendants sought to dismiss the Second and Third Causes of Action under

Rule 12(b)(6) pursuant to LMRA Section 301 preemption because those claims are based on the assumption that there is in fact an enforceable Memorandum Agreement–an enforceable collective bargaining relationship–at issue.  Fourth, also because the Second and Third Causes of Action are based on the assumption that the Memorandum Agreement is enforceable, the forum selection clause of the Trust Agreements controls, as it is incorporated into the Memorandum Agreement, and the forum selection clause mandates that the lawsuit must have been filed in Los Angeles, California. Dkt. 16-1, Exh. 1 at p. 0004, ¶ 1; Dkt. 17-1, Exh. 2 at p. 013 (Health and Welfare Trust, Article V, Section 3); Dkt. 17-2, Exh. 2 at p. 047 (Pension Trust, Article V, Section 3); Dkt. 17-3, Exh. 2 at p. 088 (Vacation Trust, Article V, Section 3); Dkt. 17-4, Exh. 2 at p. 139 (Training Fund, Article V, Section 3).

In Plaintiff's Opposition, its first two arguments are that (1) the Defendants seek to impose obligations that HKB never agreed to, as Tom Allen did not have the authority to bind the company when he signed the Memorandum Agreement, and (2) HKB never accepted the Trusts' forum-selection clause because HKB never by its conduct ratified the agreement that had been signed by Tom Allen. Dkt. 19, pp. 2-6.

Plaintiff's first two arguments do not in any way address any of the grounds for dismissal.  They do not address the first and second grounds for dismissal because they are not relevant to first-to-file rule and do not detract from the fact that, as explained below, in an action to set aside the Memorandum Agreement, the SWRCC must be made a party because it may be affected by the determination that there was no valid Memorandum Agreement. Lomayaktewa v. Hathaway, 520 F.2d 1324, 1325 (9th Cir. Ariz. 1975). Plaintiff's first two arguments also do not address the third and fourth grounds for dismissal because they relate to the Second and Third Causes of Action, which already

3

presume the existence of an enforceable Memorandum Agreement. Plaintiff's first two arguments are therefore a red herring with respect to the motion to dismiss.

### 3. The Forum-Selection Clause of the Trust Agreements Does Not Violate Arizona Public Policy

Plaintiff argues that the forum-selection clause of the Trust Agreements is unenforceable because it violates Arizona public policy that is codified in A.R.S. § 32-1129.05.[1] Dkt. 19, pp. 6-7. Plaintiff maintains that this statute voids the forum selection clause, because the statute mandates that provisions in or collateral to construction contracts that require litigation arising from the contract to be conducted in another state are void. This statute, however, is inapplicable, because the forum-selection clause is not in or collateral to a "construction contract" within the meaning of the statute.

Subsection (A)(1) of A.R.S. § 32-1129.05 is inapplicable: It voids provisions, covenants, clauses in or affecting construction contracts that require that litigation resulting from such construction contracts be conducted in another state. There is no provision in the Memorandum Agreement or Trust Agreements that requires that litigation resulting from Defendants' construction contracts be conducted in another state. The Memorandum Agreement and Trust Agreements are not "construction contracts", as A.R.S.§ 32-1129(A)(1) defines a "construction contract" as being "a written or oral agreement relating to the construction, alteration, repair, maintenance, moving or demolition of any building, structure or improvement or relating to the excavation of or other development or improvement to land." Id.

Subsection (B) of A.R.S. § 32-1129.05 is likewise inapplicable: It requires that

---

[1] Plaintiff cites A.R.S. § 32-1195(A)(1), but the wording of the statute it cites is that of A.R.S. § 32-1129.05.

4

mediations, arbitrations or other dispute resolution proceedings arising from construction contracts for work performed in Arizona shall be conducted in Arizona. First, the Memorandum Agreement and Trust Agreements do not address the location where dispute resolution proceedings resulting from Defendants' construction contracts must be conducted. Second, while the Arizona statutes do not define the term "dispute resolution proceeding", Plaintiff's implication that dispute resolution proceedings include court actions, such as this case, is incorrect. If this interpretation were correct, A.R.S.§ 32-1129.05 would modify federal court jurisdiction. This is obviously outside of the powers of the Arizona legislature. For these reasons, the forum-selection clause does not violate Section 32-1129.05.

### 4. The Complaint Should Be Dismissed for Failure to Join the SWRCC, an Indispensable Party

Plaintiff's rebuttal to the Defendants' argument that the SWRCC is an indispensable party, such that the Complaint should be dismissed under Rule 12(b)(7), is based on the false premise that the SWRCC is merely an assignor, who has assigned all of its interest at issue in the lawsuit to the Carpenters Southwest Administrative Corporation ("CSAC"). Dkt. 19, p. 14. Plaintiff here misconstrues the allegations in the California action on which it relies for this false assertion. As alleged in that lawsuit, the SWRCC is a labor organization that is a party to the collective bargaining agreement (Dkt. 16-4, Exh. 5, ¶ 12 at p. 016): the Memorandum Agreement and the MLA. CSAC is an administrator of the funds to which Plaintiff failed to contribute. Dkt. 16-4, Exh. 5 ¶ 9 at p. 015. It is *not* an assignee of the collective bargaining agreement: the SWRCC has not assigned its interest in it to anyone.

Plaintiff also argues that Defendants' argument that the SWRCC is an indispensable party is disingenuous because had Defendants believed this to be true, the SWRCC would have also been made a party to the California action. Dkt. 19, p. 15. This

5

argument, however, ignores the fact that in this action, unlike in the California case brought against Plaintiff, the main contention is that there is no contractual relationship. If the Court agrees with Plaintiff's contention, the SWRCC's ability to protect its interest in enforcing the CBA will be impeded. FRCP 19(a)(1)(B)(i); Acton Co. of Massachusetts v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982)(parent corporation that signed the contract at issue was an indispensable party in an action seeking a declaration that no enforceable agreement existed). As stated by the Ninth Circuit, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." Lomayaktewa, 520 F.2d at 1325. This action is fundamentally different from the California case, which is premised on the *existence* of an enforceable CBA, in that here, Plaintiff seeks to set aside the CBA, and the union which is a signatory to the CBA is an indispensable party. Id. Although Plaintiff here makes an argument about exactly what the CBA here requires in terms of the hiring of Carpenter members (see Dkt. 19, p. 15), that does not detract from the fact that the SWRCC is an indispensable party to an action to set aside the CBA it is a party to, whatever the CBA may require. Id.[2]

Finally, Plaintiff argues that it is "laughable" that Defendants pointed out that the absence of the SWRCC may leave HKB "subject to inconsistent determinations with respect to whether there is a contractual relationship", because hardship to the plaintiff should not be a consideration in the Rule 19 analysis. Dkt. 19, p. 15; Dkt. 14, p. 8. However, inconsistent determinations with respect to this issue also would affect the Trust

---

[2] Plaintiff also contends that the Memorandum Agreement expired by its terms on June 30, 2016, in an effort to show that the SWRCC is not an interested party here because the CBA at issue is no longer in effect. Dkt. 19, p. 15, lines 12-13. However, if Plaintiff itself believed this to be true, there would have been no need to file a lawsuit to declare the CBA unenforceable. Additionally, Plaintiff does not allege the Memorandum Agreement has expired and by its terms, the agreement continues to be in effect unless it is terminated at a particular time. See Dkt. 16-1, Exh. 1, ¶ 13 at pp. 007-008. It was not terminated, nor is it alleged that it has expired.

6

Funds and the SWRCC, so this possibility presents potential hardship to the existing defendants as well as the union. For the foregoing reasons, the requirements of Rule 19(a)(1)(B) have been satisfied.

### 5. Plaintiff's State Law Claims Are Preempted By Section 301

Plaintiff makes several contentions in response to Defendants' argument that Section 301 preempts the Second and Third Causes of Action because those are state causes of action that are "inextricably intertwined with consideration of the term of the labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). All of these contentions are meritless.

First, Plaintiff argues that Section 301 preemption does not apply to the Second Cause of Action because it is not a state claim to begin with. Plaintiff maintains that this cause of action may be construed as an ERISA claim because the doctrine of reasonable expectations also applies to ERISA claims. Dkt. 19, p. 16. In the ERISA context, however, that doctrine protects the "reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 386 (9th Cir. 1994). Plaintiff has not cited any case for the proposition that the doctrine applies with respect to CBA's signed between an employer and a union that incorporates the requirement to pay into ERISA-governed benefit plans. It is, further, under federal law not a cause of action but rather a doctrine used to determine whether insurance coverage *applies*. Id. at 387. The Arizona state doctrine of reasonable expectations, on the other hand, *relieves* a party of certain clauses of an agreement. Phila. Indem. Ins. Co. v. Barrera, 200 Ariz. 9, 14 (2001). Plaintiff here is clearly attempting to relieve itself of the obligation to comply with the provisions requiring payments into the Trust Funds for work performed by workers not hired through the Carpenters hiring hall, so its Second Cause of Action is in fact a state claim, not a federal claim.

There is also nothing in the Third Cause of Action to indicate that it is a federal ERISA claim, as opposed to a state claim relating to an "employment contract". See Dkt. 1, ¶ 40. Plaintiff's argument that Section 301 preemption does not apply to the Second and Third Causes of Action because the causes of action are federal ones, is therefore meritless. These are in fact state claims.

Secondly, Plaintiff claims that even if these two claims are state claims, Section 301 does not apply because Defendants did not perform the required analysis. Dkt. 19, p. 17. The Defendants, however, have already explained that the preemption test, as explained by the Ninth Circuit in <u>Miller v. AT & T Network Systems</u>, 850 F.2d 543 (1988), is satisfied. The CBA contains provisions that govern the determination of whether the Second and Third Causes of Action have merit. The Second Cause of Action requires an analysis of the CBA to make a finding as to whether the requirement to pay into the Trust Funds applies even if the work is being performed by Plaintiff's own full-time permanent employees, and whether Plaintiff probably would have understood this to be the case. <u>Phila. Indem. Ins.</u>, 200 Ariz. at 14.

With respect to the Third Cause of Action, the CBA would have to be analyzed to determine when the cause of action accrued, e.g., at the time of non-payment to the Trust Funds or discovery of non-payment, or another time. The state law is not sufficiently clear to obviate the need to evaluate the CBA. There is no way to determine whether Plaintiff would have understood certain provisions relating to the requirement to pay into the Trust Funds without actually reading those provisions, and the reasonable expectations doctrine actually requires reading the agreement. <u>Id.</u> The state law on A.R.S. § 12-541 is also not sufficiently clear on when "the cause of action accrues", which makes it necessary to look to the CBA to determine when the breach of non-payment by Plaintiff or the triggering event occurred. For these reasons, the <u>Miller</u> test has in fact been satisfied and both the Second and Third Causes of Action, which presume the existence of a collective bargaining relationship, are preempted by Section 301. <u>Miller</u>, 850 F.2d at 548.

### 6. *Forum non Conveniens* Does Not Provide a Justification to Not Dismiss This Lawsuit

Plaintiff argues the first-to-file rule should not apply here given that Plaintiff was the first to serve Defendants with its Complaint in this Court, and not vice versa. However, "the first to file rule means the first to be filed, not the first to be served." Collegenet, Inc. v. Applyyourself, Inc., 2002 U.S. Dist. LEXIS 28063, *3 (D.Or. 2002). It is therefore irrelevant who served the other first.

Plaintiff also invokes the principle of *forum non conveniens* to argue that its choice of forum is entitled to deference. Dkt. 19, p. 8. However, by agreeing to a forum selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Atl. Marine Constr. Co. v. U.S. Dist. Court, 571 U.S. ___, 134 S. Ct. 568, 582, 187 L. Ed. 2d 487 (2013). Hence, "a district court may consider arguments about public-interest factors **only**," and not any private interest factors. Id. (emphasis added). The party challenging a valid forum selection clause must show that the public interest factors "overwhelmingly disfavor" enforcement. Id. at 583. Public interest considerations will rarely defeat a transfer motion seeking to enforce a valid forum selection clause, and the clause is to be "given controlling weight in all but the most exceptional cases." Id. at 579, quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 33, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (Kennedy, J., concurring).

Here, Plaintiff erroneously considers private interest factors along with the public interest ones, even though its *forum non conveniens* argument rests on the assumption that the Memorandum Agreement, and therefore the forum selection clause, applies. Dkt. 19, pp. 9-10. However, only public interest factors may be considered. Atl. Marine Constr. Co., 134 S. Ct. at 582. The public interest factors are the following: (1) local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum. Boston Telecomms. Grp. v. Wood, 588 F.3d 1201, 1211

(9th Cir. 2009). They do not weigh in favor of allowing this lawsuit to be prosecuted concurrently with the California action.

Regarding the public interest factors, although Arizona has a local interest in providing a forum to an Arizona corporation to address its alleged grievance, none of the other factors weigh in favor of allowing this lawsuit to proceed. Regarding the second factor, as explained above, the Second and Third Causes of Action are preempted by Section 301, a federal law, and district courts have equal familiarity with federal law. Intria Corp. v. Intira Corp., 2000 U.S. Dist. LEXIS 17039 at *26 (S.D.N.Y. 2000). With respect to the First Cause of Action, Defendants maintain that Plaintiff ratified the agreement signed by Tom Allen, and California law is in agreement with Arizona law regarding ratification. See e.g., Artukovich v. Pacific States Cast Iron Pipe Co., 78 Cal. App. 2d 1, 3 (1947); All-Way Leasing, Inc. v. Kelly, 182 Ariz. 213, 216 (Ariz. Ct. App. 1994). Therefore, while this Court is familiar with the law relevant to this action, a California federal court is no less familiar with it.

Regarding the third and fourth factors, the burden on local courts and juries, and congestion in the court, Plaintiff has not offered any evidence to the effect that the present case would impose an undue burden on this Court or that the Arizona District is any less congested than the Central District of California. As for the final factor, the costs of resolving a dispute unrelated to a particular forum, it is not considered in cases like the present case where Plaintiff resides in the District. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1182 (9th Cir. 2006).

///
///
///
///
///
///
///

After reviewing these factors, there has been no showing that there is an exception to the first-to-file rule in this case.

### 7. Conclusion

For the foregoing reasons, the Complaint should be dismissed.

DATED: December 16, 2016

DeCARLO & SHANLEY
A Professional Corporation

/s/ Daniel M. Shanley

_____
Daniel M. Shanley
Attorneys for Defendants,
CARPENTERS SOUTHWEST
ADMINISTRATIVE CORPORATION and
BOARD OF TRUSTEES FOR THE
CARPENTERS SOUTHWEST TRUSTS

## CERTIFICATE OF SERVICE

**(H K B, Inc., etc., v. Board of Trustees, etc.)**
**(USDC-Arizona Case No. 2:16-cv-03799DJH)**

X    I hereby certify that on December 16, 2016, I electronically transmitted the attached document, **Defendants' Reply to Plaintiffs Opposition to Motion to Dismiss or Stay the Action**, to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

    James Edward Holland, Jr. - jholland@stinson.com,cbarajas@stinson.com

X    I hereby certify that on December 16, 2016, I served the attached document by U.S. Mail, postage prepaid thereon on the following, who are not registered participants of the CM/ECF System.

    Javier Torres
    Stinson Leonard Street, LLP - Phoeniz, AZ
    1850 N. Central Avenue, Suite 2100
    Phoenix, Arizona 85004

_____
Lucy J. Moure-Pasco, Secretary
DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 900710
Telephone (213) 488-4100
Telecopier (213) 488-4180