James E. Holland, Jr. (021826)
Javier Torres (032397)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email:  james.holland@stinson.com
           javier.torres@stinson.com
Attorneys for HKB, Inc., dba Southwest Industrial Rigging

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging,<br><br>Plaintiff,<br><br>v.<br><br>Board of Trustees for the Southwest Carpenter's Southwest Trust; et al.,<br><br>Defendants. | No. 2:16-cv-03799<br>No. 2:17-cv-00198<br><br>**AMENDED MOTION FOR SUMMARY JUDGMENT (STATUTE OF LIMITATION)**<br><br>**Oral Argument requested**<br><br>(Assigned to the Honorable Diane J. Humetawa) |
| Board of Trustees for the Southwest Carpenter's Southwest Trust; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging, et al.<br><br>Defendants. | |

Plaintiff HKB, Inc., dba Southwest Industrial Rigging ("Southwest") moves for summary judgment against defendants Board of Trustees for the Southwest Carpenter's Southwest Trust and Carpenters Southwest Administrative Corp. (collectively, the "Funds") because their claims are barred by the one-year statute of limitation contained in A.R.S. § 12-541. Through this lawsuit, the Funds seek to be paid for work performed by Southwest's non-union employees from September 2013 through December 2014, but the Funds always knew that Southwest only paid for work performed by union

carpenters, not for work performed by Southwest's non-union employees, so the claim was barred within one year after the work was performed. At the very latest, the Funds knew the basis for their claim on October 26, 2015 when they performed an onsite audit of Southwest's records. Nevertheless, the Funds did not file their lawsuit until October 28, 2016, so Southwest's claim is time barred.

**1.     Long after the relevant work was completed, the Funds seek to impose obligations that Southwest never agreed to.**

Southwest is a construction-related company that, among other things, performs maintenance and repair work at the Palo Verde Nuclear Generating Station just west of Phoenix (the "Power Plant") twice a year for 4-6 weeks at a time.[1] Southwest had previously used carpenters provided by the Southwest Regional Council of Carpenters (the "Union") to supplement its workforce for the maintenance and repair work at the Power Plant.[2]

The Funds collect payment for various vacation, retirement, and training plans for the Union members' benefits. Southwest paid the carpenters (and the Funds) for the temporary work actually performed by them, but nothing beyond the work actually provided by the union employees at the Power Plant.[3]

Several years after Southwest first began hiring and paying for services provided by the Union's carpenters, the Funds performed an "audit" regarding Southwest's payments to the Funds.[4] As a result of the audit, the Funds demanded that Southwest make additional payments in excess of $490,000, for various health-care, training, vacation, and pension funds.[5] This payment demand was not based upon any work performed by the Union's carpenters.[6] Rather, the Funds demanded payment solely

---

[1] Statement of Facts ("SOF") ¶ 1.
[2] SOF ¶ 2.
[3] SOF ¶ 3.
[4] SOF ¶ 4.
[5] SOF ¶ 5.
[6] SOF ¶ 6.

CORE/3008422.0002/132034034.2

1 based upon services *performed by Southwest's own employees*.[7] Apparently, the Funds
2 interpreted the "Southwest Regional Council of Carpenters – Carpenters Memorandum
3 2012-2016" (the "Memorandum"), as requiring Southwest to pay the Funds for work
4 performed by Southwest non-union employees.

5 Southwest's employees are not members of and have no affiliation with the
6 Union.[8] Nevertheless, the Funds claimed one of the documents incorporated into the
7 Memorandum says Southwest must pay the Funds for all work performed by
8 Southwest's employees even though they are not union members and do not receive
9 union benefits.[9] In other words, the Funds' claim that because Southwest hired union
10 carpenters for temporary work at the Power Plant, Southwest is required to pay the
11 Funds for all work performed year-round by Southwest's non-union employees. As
12 explained in detail below, this claim is untimely because the Funds filed this lawsuit
13 October 28, 2016—one year and two days after conclusively discovering the basis for
14 its claim through an onsite audit.

15 Southwest maintains that it is not bound by the Memorandum, but this motion
16 disposes of the Fund's claim based solely on the statute of limitation.

17 **2.    The Funds' claim is barred by Arizona's one-year statute of limitation.**

18 Although the Funds' claim arises from federal ERISA statutes, "ERISA itself
19 does not contain a statute of limitations applicable to [Southwest's] claims. Therefore,
20 the Court must borrow the most analogous state statute of limitations."[10] As this Court
21 concluded in a prior case, Arizona's "one-year period applicable to 'employment
22 contract' disputes is the most analogous state statute of limitations for [ERISA]
23 claims."[11] The California district court, as part of its venue analysis when transferring
24 this case to Arizona, likewise observed that "the statute of limitations [for this case] is

---

[7] SOF ¶ 7.
[8] SOF ¶ 8.
[9] SOF ¶ 9.
[10] *Blood Sys., Inc. v. Roesler*, 972 F. Supp. 2d 1150, 1154 (D. Ariz. 2013).
[11] *Blood Sys., Inc.*, 972 F. Supp. 2d at 1154 (citing A.R.S. § 12-541).

CORE/3008422.0002/132034034.2

3

governed by Arizona law."[12]

There are at least four different events that cause the claim to accrue and trigger the statute of limitation. Each of these events occurred more than a year before the Funds filed their lawsuit. Thus, no matter which date is used, the Funds claim is untimely.

### A. The Funds' claim is not subject to the discovery rule, so the claim accrued as the work was performed.

"As a general matter, a cause of action accrues, and the statute of limitations commences, when one party is able to sue another. The traditional construction of that rule has been that the period of limitations begins to run when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim."[13] That rule has been modified in some instances by the discovery rule, but "the discovery rule does not apply to cases where the plaintiff's injury is open and obvious."[14]

Southwest's nonpayment to the Funds was clearly open and obvious. That is, the Funds certainly knew that they were not receiving monthly payments for Southwest's employees. As such, "the cause of action accrues and the statute of limitations begins to run when the debt becomes due."[15] Under the relevant documents, the Funds' claim for payment arose automatically every month, without any action being required by the Funds or Southwest. "Each contribution to the Fund shall be made promptly, and in any event on or before the 25th day of the calendar month."[16] Relevant here, the Funds are

---

[12] U.S. District Court of Arizona – 2:17-cv-00198 (formerly Central District of California CV-16-8040-MWF (SKx)) Civil Minutes—General p.8 (1/17/17), Exhibit 2.
[13] *Gust Rosenfeld v. Prudential Ins.*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995).
[14] *Gust Rosenfeld*,182 Ariz. at 589, 898 P.2d at 967; *Premium Cigars Intern., Ltd. v. Farmer-Butler-Leavitt Ins. Agency*, 208 Ariz. 557, 572, 96 P.3d 555, 570 (App. 2004).
[15] *Cheatham v. Sahuaro Collection Serv.*, 118 Ariz. 452, 454, 577. P.2d 738, 740 (App. 1978).
[16] Amended and Restated Trust Agreement Establishing the Southwest Carpenters Health and Welfare Trust Article III, Section 3; Amended and Restated Trust Agreement Establishing the Southwest Carpenters Pension Trust Article III, Section 3; Amended and Restated Trust Agreement Establishing the Southwest Carpenters Vacation Trust Article III, Section 3; Amended and Restated Trust Agreement

CORE/3008422.0002/132034034.2

4

seeking payment for work performed by Southwest employees from September 1, 2013 through December 31, 2014.[17] Southwest's nonpayment during at that time was all that was necessary for the claim to accrue and the statute of limitations to begin. So the Funds' claim is time-barred as a matter of law.

### B.   Even with the discovery rule, the Funds' claim is untimely because the claim accrued each month.

Even if the Funds' claim is subject to the discovery rule (it is not), the claim is still untimely. For a claim to accrue, "the aggrieved party need not have actual notice of the [breach] to start the running of the statute, but, if the facts and circumstances were such as in the exercise of reasonable care and diligence he should have discovered the [breach], he is deemed to have notice."[18] Put another way, claims accrue when a plaintiff "suspects" the cause of action exists, even without all the facts.[19] And "a party's failure to assert a cause of action does not mean that the cause of action has not accrued."[20]

The Funds have always known that Southwest had non-union employees. Indeed, Southwest only hired Union workers to temporarily supplement Southwest's existing workforce on the Power Plant.[21] Moreover, when purportedly signing the Memorandum, Tom Allen explicitly stated what the Union already knew—that Southwest had 200 employees of its own.[22] Thus, if Southwest was to be contractually obligated to pay the Funds for work performed by Southwest's non-union employees,

---

Establishing the Southwest Carpenters Health and Welfare Trust Article III, Section 3; Amended and Restated Trust Agreement Establishing the Southwest Carpenters Training Trust Article III, Section 3, Exhibit 3.
[17] Central District of California CV-16-8040-MWF (SKx) Complaint ¶ 31 (10/28/16).
[18] *In re Cassidy's Estate*, 77 Ariz. 288, 295, 270 P.2d 1079, 1084 (1954).
[19] *Thompson v. Pima County*, 226 Ariz. 42, 46-47, 243 P.3d 1024, 1028-29 (App. 2010) (claim accrued when plaintiff "suspected" the cause of her injury even though she did not yet know all the facts).
[20] *Cheatham v. Sahuaro Collection Serv*, 118 Ariz. 452, 454, 577 P.2d 738, 740 (App. 1978).
[21] SOF ¶ 4; *Friedman v. Nagin*, 270 A.D. 503, 505, 60 N.Y.S.2d 620, 622 (App. Div. 1946) ("[An] assignee stands in the shoes of his assignors and their knowledge is his.").
[22] *See* Exhibit 1, Declaration of James Douglas Wilson, at Exhibit A.

CORE/3008422.0002/132034034.2

the Funds knew at the very outset that such payment would be due.

The Funds have likewise always known that Southwest was not paying the Funds for work performed by Southwest's non-union employees. Under the terms of the trust documents, the Funds were to be paid monthly. "Each contribution to the Fund shall be made promptly, and in any event on or before the 25th day of the calendar month."[23]

Southwest paid the Funds for work performed by Union carpenters during the 4-6 weeks that the Southwest performed maintenance work on the Power Plant, but Southwest never paid the Funds at any other time in the year.[24] What's more, Southwest *never* paid the Funds for work performed by Southwest's own employees.[25] Thus, the Funds have always known (or should have known) that they were not receiving payment for work performed by Southwest's employees. Again, the claim at issue in this lawsuit is for work performed through December 31, 2014. The Funds plainly knew that they had not received monthly payments for work performed by Southwest's employees during this time. Thus, the Funds' claim accrued each month after the work was performed, so this lawsuit is untimely.

### C. The Funds' claim had accrued by the time the Funds sought an audit of Southwest's non-union employees.

"A plaintiff is deemed to have had constructive knowledge if [he or she] had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim]."[26] Knowing that Southwest had not paid for any services performed by Southwest's non-union employees, the Funds requested

---

[23] Amended and Restated Trust Agreement Establishing the Southwest Carpenters Health and Welfare Trust Article III, Section 3; Amended and Restated Trust Agreement Establishing the Southwest Carpenters Pension Trust Article III, Section 3; Amended and Restated Trust Agreement Establishing the Southwest Carpenters Vacation Trust Article III, Section 3; Amended and Restated Trust Agreement Establishing the Southwest Carpenters Health and Welfare Trust Article III, Section 3; Amended and Restated Trust Agreement Establishing the Southwest Carpenters Training Trust Article III, Section 5.
[24] SOF ¶ 10.
[25] SOF ¶ 11.
[26] *Marceau v. International Broth. of Elec. Workers*, 618 F. Supp. 2d 1127, 1146 (D. Ariz. 2009)

CORE/3008422.0002/132034034.2

documents from Southwest's records. With its response, dated May 28, 2015, Southwest produced requested records, including a "Master Control" document, which contained compensation information of individuals who worked on Southwest projects, including both Southwest employees and Union members.[27] When producing the Master Control, Southwest redacted the names and social security numbers of its non-union employees but allowed the Funds to see their job titles, hours, and other compensation information:[28] "Attached find our master control for 2014, attachment includes pages with the Carpenters Union employees only. I have blacked out non Carpenters Union employees names and SS# to protect their information."[29]

To the extent that the Funds' claim had not accrued before (it had), there can be no doubt it accrued at this point. It was now even more of a certainty that non-union Southwest employees were performing work for which, according to the Funds' interpretation of the underlying documents, Southwest should have, but did not pay. In other words, since the Funds knew that they had not been paid for work performed by Southwest's employees, they knew enough to make further inquiry. Because they knew enough to inquire further, the Funds' claim had accrued. Indeed, the Funds ultimately asserted their claim against Southwest solely based upon the work performed by Southwest's employees and their hours logged, information that Southwest produced when it disclosed the Master Control in May 2015.[30]

Realizing they had a claim to be made, the Funds continued to press Southwest for more information regarding Southwest's non-union employees. Specifically, by letter dated June 4, 2015, they sought (1) a "List of all jobs" performed by Southwest (not just the Power Plant job), (2) the "Payroll journals on all jobs," and (3) Copies of W-2s.[31] The Funds' demand for this information clearly demonstrates that the Funds

---

[27] Exhibit 4, Email from Xonia Ornelas to Yolanda Duke (5/28/15).
[28] *Id.*
[29] *Id.*
[30] Exhibit 4.
[31] Letter from Yolanda Duke to Southwest (6/4/15), Exhibit 5.

CORE/3008422.0002/132034034.2

7

1  knew or at least had significant suspicions regarding their claim. Said differently, the
2  Funds were expressly targeting work performed by Southwest's non-union employees,
3  which necessarily means that the Funds believed that a claim could be made. Indeed, the
4  Funds even threatened to commence legal action against Southwest at that time.
5  "Failure to respond will result in this matter being referred to the [Fund's] attorney."[32]

6  Again, "accrual requires only actual or constructive knowledge of the fact of
7  damage, [not the] calculated amount of damage."[33] The Funds' audit demand
8  demonstrates that the Funds had enough information to cause them to investigate (and
9  threaten legal action), which means the claim accrued by, at the latest, June 4, 2015.
10 Since they did not file this lawsuit until 16½ months later, their claim is barred by the
11 one-year statute of limitation.

### D. The Funds' claim accrued when the Funds conducted an on-site audit of Southwest's records.

14 As a follow-up to their demand for more information, on October 26, 2015, the
15 Funds sent a representative to Southwest's corporate office to perform an onsite audit of
16 Southwest's records.[34] During the on-site audit, the Funds' representative inspected a
17 copy of the Master Control, but this time the auditor could see the names of Southwest
18 employees that had previously been redacted.[35] At this point, the Funds not only knew
19 the job title, hours, and compensation of Southwest's employees, they knew each
20 employee's name. The Funds cited this information from their audit as their basis for
21 concluding that Southwest owed them money: "[The Funds] completed an audit of the
22 Plaintiffs contributions to the Trust Funds, which showed that the Plaintiffs Trust Funds
23 contributions were delinquent."[36] Thus, the Funds knew enough to bring their claim as of

---

[32] *See* Exhibit 5.
[33] *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, 177, 7 P.3d 979, 983 (App. 2000).
[34] SOF ¶ 12.
[35] SOF ¶ 13.
[36] Defendants' Motion to Dismiss Pursuant to FRCP 12(B)(3), (6), (7), or, in the Alternative, to Stay Action 3:12-13 (Doc 14).

CORE/3008422.0002/132034034.2

8

1  October 26, 2015.

2  Of course, the Funds' claim accrued long before it sent an auditor to Southwest's headquarters. "[A]accrual requires only … constructive knowledge of the fact of damage, [not knowledge of the] amount of damage."[37] But even after the Funds' awareness of their claim progressed from constructive knowledge (which is itself sufficient to bring a claim) to actual knowledge on October 26, 2016, the Funds waited more than a year to file suit. When they finally filed on October 28, 2016, their claim was untimely.

### 3. Conclusion.

Long after the relevant work was completed in December of 2014, the Funds are seeking to impose an obligation that Southwest never agreed to. Even if the claim was otherwise legitimate (it is not), it is time barred. The Funds' claim is not subject to the discovery rule, so the claim automatically accrued when the work was performed (i.e. September 2013-December 2014). What's more, the Union has always known that Southwest had its own employees, so they knew or should have known of the unpaid claim within a month after the work was performed. They also knew of the claim when they expressly referenced Southwest employees as of June 4, 2015, and they had actual knowledge of their claim when they discovered the actual names of Southwest's employees during their onsite audit of Southwest's records on October 26, 2015. Thus, the Funds' claim was time-barred (in spades) when they filed their lawsuit October 28, 2016. Accordingly, Southwest is entitled to and respectfully requests that the Court grant summary judgment dismissing the Funds' claims.

. . . .

. . . .

. . . .

---

[37] *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, 177, 7 P.3d 979, 983 (App. 2000).

CORE/3008422.0002/132034034.2

1    RESPECTFULLY SUBMITTED  15th  day of March 2017.

**STINSON LEONARD STREET LLP**

By:   /s/ James E. Holland, Jr.
James E. Holland, Jr.
Javier Torres
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Attorneys for Southwest Industrial Rigging

CORE/3008422.0002/132034034.2

10

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2017 I caused the foregoing document to be filed electronically with the Clerk of Court through ECF; and that ECF will send an e-notice of the electronic filing to:

Daniel Shanley
DeCarlo & Shanley
533 South Freemont Avenue, Ninth Floor
Los Angeles, California 90071-1706
dshanley@deconsel.com

/s/ Celia Munguia

CORE/3008422.0002/132034034.2

11