James E. Holland, Jr. (021826)
Javier Torres (032397)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email:  james.holland@stinson.com
        javier.torres@stinson.com

Attorneys for HKB, Inc., dba Southwest Industrial Rigging

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging,<br><br>Plaintiff,<br><br>v.<br><br>Board of Trustees for the Southwest Carpenter's Southwest Trust; et al.,<br><br>Defendants. | No. 2:16-cv-03799<br>No. 2:17-cv-00198<br><br>**REPLY RE: MOTION FOR SUMMARY JUDGMENT (STATUTE OF LIMITATION)**<br><br>(Assigned to the Honorable Diane J. Humetawa) |
| Board of Trustees for the Southwest Carpenter's Southwest Trust; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging, et al.<br><br>Defendants. | |

In its motion for summary judgment, plaintiffs submitted sworn declarations demonstrating that the Funds actually knew the basis for their claim more than a year before they filed suit. In response, the Funds never contest those facts. They instead cite longer limitation periods for ERISA claims in other states. But none of those states had a specific statute of limitation for employment claims. When states have a specific limitation for employment claims, the specific limitation governs. Since Arizona has a one-year limitation specifically for claims arising out of employment contracts, the

CORE/3008422.0002/132639229.1

Funds' claim is time barred.

**1. The Funds' claim is subject to Arizona's one-year statute of limitation.**

*A. The Funds claim arises from an "employment contract."*

Although Congress did not adopt a specific statute of limitation for ERISA, it provided instruction regarding the issue. "Under the Federal Rules Decision Act, 'The laws of the several States . . . shall be regarded as rules of decision in trials . . . where they apply.'"[1] In other words, because Congress adopted the "laws of the *several* states," this Court must apply "the state statute of limitations that applies to the most similar state cause of action."[2]

The parties agree that the limitation in this case is governed by Arizona law. Their disagreement is simply which Arizona limitation to apply. In Arizona everything about "the employment relationship is contractual in nature."[3] But Arizona has two statutes of limitation for contract claims—a six-year limitation for general run-of-the-mill written contracts[4] and a one-year limitation for claims arising from a "breach of … employment contract."[5] Selecting the correct limitation is easy in this case because specific statutes trump general statutes.[6] This Court has already concluded in *Blood Systems v. Roesler* that Arizona's "one-year period applicable to 'employment contract' disputes is the most analogous state statute of limitations for [ERISA] claims."[7]

Just like the Funds argue here, Roesler argued that its claim should be governed by the six-year limitation for run-of-the-mill contracts because the Ninth Circuit adopted general six-year limitations in states that did not have a unique limitation for employment claims. Quoting the Supreme Court, however, *Roesler* rejected that argument. "[T]he task is to apply the local time limitation *most analogous* to the case at

---

[1] *Republic Pictures Corporation v. Kappler*, 151 F.2d 543, 546 (8th Cir. 1945).
[2] *Major v. Arizona State Prison*, 642 F.2d 311 (9th Cir. 1981) (abrogated on other grounds as recognized in *Tomlin v. Lucas*, 865 F.2d 209 (9th Cir. 1989)).
[3] A.R.S. § 23-1501(A)(1).
[4] A.R.S. § 12-548.
[5] A.R.S. § 12-541.
[6] *Roesler*, 972 F. Supp. 2d at 1154.
[7] *Roesler*, 972 F. Supp. 2d at 1154 (citing A.R.S. § 12-541).

CORE/3008422.0002/132639229.1

1 hand. In other words, the issue is not which state statute of limitations is 'perfect' fit for
2 the federal claim, but which statute of limitations is the closest fit."[8] In determining the
3 closest fit, "a federal court must accept the state's interpretation of its own statutes of
4 limitations."[9] Arizona's definition of "employment contract" under 12-541 is extremely
5 broad. It "is not limited to 'agreements affecting a term of employment.'… Instead, it
6 includes 'all contracts defining specific responsibilities of the employer to the
7 employee.'"[10] Because Arizona's definition of "employment contract" under A.R.S. §
8 12-541 is so broad, it governs this ERISA claim. As *Roesler* observed, it is
9 "indisputable that the parties' contract defined specific responsibilities of [the employer
10 for the employee]… [so the] ERISA plan qualifies as claims under an 'employment
11 contract'" under A.R.S. § 12-341.[11]

*Roesler* governs this case. The Funds have claimed that they should receive payments from Southwest as compensation for the union's employment services. In other words, the Funds are seeking to enforce an "employment contract" under A.R.S. § 12-541. In fact, the Funds repeatedly describe their claim in employment terms—they refer to Southwest as the "Employer,"[12] the union workers as "Employees,"[13] the Funds as a "multi-employer plan,"[14] the hours worked as "compensated hours,"[15] and the compensation as "wages,"[16] "fringe benefits,"[17] and "employees' taxable income."[18] All

---

[8] *Roesler*, 972 F. Supp. 2d at 1154 (quoting *Lampf v. Gilbertson*, 501 U.S. 151, 350, 355, 111 S.Ct. 2773 (1991) and *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 171, 103 S.Ct. 2281 (1983); quotation marks omitted).
[9] *Roesler*, 972 F. Supp. 2d at 1154 (quoting *Barajas v. Bermudez*, 43 F.3d 1251, 1258 (9th Cir. 1994) (quotation marks omitted)).
[10] *Roesler*, 972 F. Supp. 2d at 1155 (quoting *Redhair v. Kinerk*, 218 Ariz. 293, 296, 183, P.3d 544, 547 (App. 2008)).
[11] *Roesler*, 972 F. Supp. 2d at 1155.
[12] Funds' Complaint ¶ 11, 13, 14, 15-18, 20-26, 30-32, 36 (2:17-cv-00198-DJH, Doc. 1); Response to Motion for Summary Judgment 2:26-28 (Doc. 33).
[13] Funds' Complaint ¶33,9:22 (2:17-cv-00198-DJH, Doc. 1).
[14] Complaint ¶ 10 (2:17-cv-00198-DJH, Doc. 1).
[15] Response to Motion for Summary Judgment 4:26 (Doc. 33).
[16] Funds' Complaint ¶ 33 (2:17-cv-00198-DJH, Doc. 1).
[17] Funds' Complaint 9:4-5 (2:17-cv-00198-DJH, Doc. 1).
[18] Funds' Complaint ¶ 30 (2:17-cv-00198-DJH, Doc. 1).

CORE/3008422.0002/132639229.1

of these concepts support the conclusion that the Funds are seeking to enforce an "employment contract." Even more important than the way the Funds characterize their claim, the Memorandum itself squarely fits the definition of an "employment contract" under Arizona law. Relevant here, the Memorandum covers "wages, hours, and working conditions" for employing Union workers[19] and specifically describes this claim as one for "wages [and] fringe benefits."[20]

Wresting *Roesler*'s language, the Funds attempt to distinguish *Roesler* by citing *Roesler*'s observation that 12-541 governs virtually everything regarding the employer-employee relationship.[21] Because the Funds are not "employees," the Funds claim that *Roesler* doesn't apply. But the Funds take *Roesler*'s statement out of context. *Roesler* did not say the statute narrowly applies to employees. Rather, *Roesler* said the statute is expansive—covering virtually every claim arising from the employment relationship.[22] Even so, the dispositive question for this Court is to find an *analogous* claim, not a perfect fit. A statute addressing employment compensation and fringe benefits is certainly analogous to an ERISA claim for compensations to employee benefit plans.

Perhaps more important, the statute does not support the distinction that the Funds seek to create. The statute does not say that it only governs claims between employees and employers. It instead says that it governs claims "for breach of an oral or written employment contract." In other words, the statute is triggered by the nature of the claim, not the parties to the suit. The fact that the Funds filed this suit as third-party beneficiaries (rather than union employees suing directly) does not change the analysis. Indeed, third-party beneficiaries stand in shoes of those on whose behalf they assert the claim—the employees.

---

[19] Memorandum ¶ 1 (attached to the Funds' Complaint (2:17-cv-00198-DJH, Doc. 1) as Exhibit 1).
[20] Memorandum ¶ 6 (attached to the Funds' Complaint (2:17-cv-00198-DJH, Doc. 1) as Exhibit 1).
[21] Response 10:23-25 (10:23-11:9) (emphasis supplied by Funds) (Doc #33).
[22] *Roesler*, 972 F. Supp. 2d at 1155 (quoting *Redhair*, 218 Ariz. at 296, 183 P.3d at 547.

### B. *Federal policy is not offended by Arizona's one-year limitation.*

Citing *Hawaii Carpenters*, the Funds wrongly imply that courts must apply the six-year limitation because a one-year limitation would violate federal policy. *Hawaii Carpenters* said no such thing. Rather than selecting between two applicable limitations under state law, *Hawaii Carpenters* addressed one limitation that governed state-law claims and another statute that specified a much shorter limitation exclusively for federal claims. In this regard, the shorter statute of limitation for federal claims did not even satisfy the test of being the *most analogous* limitation for state claims. Rather than cover certain state-law claims, the shorter limitation showed open hostility to federal claims by dramatically shortening the limitation for federal claims while providing much more time for analogous state claims. Such hostility to federal claims violates the supremacy clause of our Constitution: "The statute violates Article 6 of the Constitution" because "the state has singled out federal claims . . . and has prescribed a shorter period of limitation for the bringing of such actions than that prescribed for the bringing of similar actions arising [from state] laws."[23]

The U.S. Supreme Court says a relatively short limitation that is applicable to both state and federal claims is not hostile to federal principles. It is the singling out of federal claims that creates the hostility: "[I]f the state does not discriminate against the [federal] claim in favor of others of equal dignity and like character, there is no warrant for exempting the claim from the effect of local statutes governing procedure or limiting the time for prosecution of action."[24] Significantly, the Supreme Court made that statement in reference to a one-year limitation. Finding no problem with the one-year limitation, the Supreme Court concluded, "In the absence of federal legislation giving priority to a claim . . . or a special remedy, the claim is not entitled to [treatment] otherwise than as specified in a nondiscriminatory statute of the [state]."[25] Thus, *Hawaii Carpenters* merely says state laws cannot discriminate against federal claims. No such

---

[23] *Republic Pictures Corp. v. Kappler*, 151 F.2d 543, 546 (8th Cir. 1945).
[24] *Pufahl v. Estate of Parks*, 299 U.S. 217, 227, 57 S. Ct. 151, 157 (1936).
[25] *Pufahl*, 299 U.S. at 227, 57 S. Ct. 151, 157, 81 L. Ed. 133 (1936).

CORE/3008422.0002/132639229.1

discrimination occurs here.

Moreover, federal policies do not otherwise require a longer limitation. In *DelCostello v. Teamsters*, the Supreme Court applied a 6-month limitation to employees' claims rather than 3-year or 6-year limitations.[26] Its reason: the 6-month limitation governed claims that were more analogous to the employees' claims than the 3-year and 6-year limitations.[27] Similarly, in *United Parcel Serv. v. Mitchell*,[28] the Supreme Court reversed the lower court's application of a 6-year limitation, finding that the employee's claim was governed by the 90-day limitation. The Court said the general contract limitation was not the most analogous statute: "[Characterizing the action] as one for 'breach of contract' ignores the significance of the fact that . . . the predicate for such an action is not a showing under traditional contract law . . . but instead a demonstration that the Union breached its duty of fair representation [in arbitration]."[29]

As these cases demonstrate, the Supreme Court is first and foremost concerned about finding the most analogous statute, not the longest one. In fact, although the Supreme Court cited good policy reasons for the shorter timeframe in *Mitchell*, it nevertheless said that it was bound to follow the state's statute, regardless of its views of policy considerations: "Obviously, if New York had adopted a specific 6-year statute of limitations for employee challenges to awards of a joint panel or similar body, we would be bound to apply that statute.… [But g]iven the choices present here, … the 90-day period [is most analogous]."[30]

The Funds are likewise wrong to suggest that circuit courts generally reject shorter limitations. The cases cited by the Funds apply general contract limitations only because the states in those cases did not have a specific statute of limitation for employment claims.[31] In other words, the Courts chose those statutes because they were

---

[26] *DelCostello v. Teamsters*, 462 U.S. 151, 170, 103 S. Ct. 2281 (1983).
[27] *DelCostello*, 462 U.S. at 170.
[28] 451 U.S. 56, 101 S. Ct. 1559, 67 L. Ed. 2d 732 (1981).
[29] *United Parcel Service,* 451 U.S. at 62, 101 S. Ct. 1559.
[30] *United Parcel Service,* 451 U.S. at 64, 101 S. Ct. 1559.
[31] Response to Motion for Summary Judgment 8:25-27 (Doc #33).

CORE/3008422.0002/132639229.1

1 the closest fit, not because they were the longest. Indeed, the parties often conceded that
2 there was not a more analogous statute.[32]

3 When presented with a choice between statutes of limitations for general contract
4 claims and shorter limitations governing employment claims, federal courts consistently
5 apply the employment limitation. In fact, *Roeser* identified two such cases: Despite
6 having longer statutes of limitation for general contracts, the Eighth Circuit adopted
7 Minnesota's two-year limitation for wage claims[33] and the Third Circuit applied
8 Delaware's one-year limitation for such claims.[34] The Third Circuit's decision to adopt
9 the one-year limitation dispenses with the Funds' argument that there's anything
10 inherently wrong with a one-year limitation. In addition to the two cases cited by
11 *Roeser*, the Seventh Circuit applied Indiana's two-year limitation for wages rather than
12 its 20-year limitation for written contracts;[35] the Eleventh Circuit applied Georgia's
13 two-year limitation for wage claims rather than its six-year limitation for simple
14 contracts;[36] and the Third Circuit applied Pennsylvania's three-year limitation rather
15 than its four-year limitation for general contracts.[37]

16 As these cases demonstrate, shorter statutes of limitation are not contrary to
17 federal policy. Indeed, "state policies of repose are fundamental to a well-ordered
18 judicial system and are not disfavored in federal law."[38] Although federal claims almost
19 always embody some public policy in favor of compensating a claimant, such policies

---

[32] *Op. Eng'rs Local 324 v. G&W Constr. Co.*, 783 F.3d 1045, 1054(6th Cir. 2015) ("the parties agree that Michigan's six-year statute of limitations for contract actions [is most analogous to the ERISA claim]"); *Locals 302 v. Meko Constr. Inc.*, 2012 WL 3812025 *2 (W.D. Wash. 2012).
[33] *Adamson v. Armco, Inc*., 44 F.3d 650, 652-53 (8th Cir.1995).
[34] *Syed v. Hercules Inc*., 214 F.3d 155, 161 (3d Cir.2000).
[35] *Intern'l Union v. Home Elevator Co.*, 798 F.2d 222, 229-30 (7th Cir. 1986); *Williams v. U.S. Steel*, 877 F.supp. 1240, 1244-45 (N.D. Ind. 1995); Ind. Code § 34-1-2-1.5.
[36] *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1242 (11th Cir. 1989).
[37] *Verneu v. Vic's Market Inc*., 896 F.2d 43, 45 (3d Cir. 1990); 42 Pa.C.S.A. § 5525; 43 Pa.S.A. § 260.9a(g).
[38] *Singleton v. City of New York*, 632 F.2d 185, 191 (2nd Cir. 1980) (*quoting Brd. of Regents v. Tomanio*, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796 (1980)).

CORE/3008422.0002/132639229.1

"are not undermined by the running of the applicable . . . limitations period."[39] Indeed, since Congress has instructed federal courts to use state statutes of limitation, it cannot be contrary to federal policies to apply the applicable state statute. On the contrary, courts are to limit their analysis of federal policy to determine "whether *Congress* has departed from the general rule" for following the most analogous statute of limitation in that instance.[40] No such Congressional departure is manifest in ERISA.[41] Indeed, Congress specified the ERISA limitation for only two specific instances not applicable here and left all other instances to state law.[42]

The Funds cite to *Felton*[43] to support their argument for a six-year limitation, but *Felton* is inapposite. *Felton* didn't even apply the six-year limitation because *Felton* was a wrongful discharge case, not a claim for unpaid ERISA funds, so it sounded in tort, not contract. More importantly, however, and fatal to the Funds' argument here, *Felton* did not address Arizona's one-year limitation for employment contract claims under 12-541(3) because 12-541(3) was not enacted until five years <u>after</u> *Felton* was decided.[44]

"[A] state statute [of limitation] cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation. If success . . . were the only benchmark … the appropriate rule would then always be the one favoring the plaintiff."[45] Applying each states' unique statute of limitation is "in fact more consistent with the policies of 'federalism' … than a rule which displaces the state rule in favor of an ad hoc federal rule."[46] A special federal limitation "can scarcely be

---

[39] *Singleton v. City of New York*, 632 F.2d 185, 191 (2nd Cir. 1980).
[40] *Brd. of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 1796 (1980).
[41] The Funds wrongly suggest that a one-year limitation could be unduly harsh. As *Roesler* observed, such concerns only arise when an "[i]ndividual [is] seeking to recover ERISA benefits." *Roesler,* 972 F. Supp. 2d at 1156-57. In the Funds own words, this is "an ERISA trust fund collection action" (Response 11:5-6), not a claim by an individual employee seeking ERISA benefits.
[42] 29 U.S.C. §§ 1113, 1451.
[43] *Felton*, 940 F.2d 503, 513 (9th Cir. 1991).
[44] Arizona Laws 1996, Ch. 140 § 2 (adding A.R.S. § 12-341(3)).
[45] *Brd. of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 1796 (1980).
[46] *Brd. of Regents v. Tomanio*, 446 U.S. 478, 491-492, 100 S.Ct. 1790, 1798 (1980).

CORE/3008422.0002/132639229.1

8

deemed a triumph of federalism when it necessitates a rejection of the rule actually chosen by the [Arizona] Legislature."[47] In other words, "plaintiffs can still readily enforce their claims, thereby [furthering federal policy of] recovering compensation and fostering deterrence, simply by [timely] commencing their actions…. Nothing prevent[s a plaintiff] from bringing suit during the [limitation] period."[48] Not surprisingly, therefore, the Ninth Circuit expressed no concerns about offending federal policy when previously applying A.R.S. § 12-341 to a federal cause of action: "While Arizona's one-year statutory period is shorter than those adopted by other states in this circuit, we cannot say that it is inconsistent with the remedial policies behind the [federal] Act, the Constitution, or other federal laws."[49]

**2.     The Funds' claim accrued more than a year before they filed suit.**

Significantly, a plaintiff need not have notice of every element for a claim to accrue. The Supreme Court "[has] been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock. . . . [W]e have been emphatic that the justification for a discovery rule does not extend beyond the injury."[50] Moreover, the plaintiff need not have actual knowledge—mere inquiry notice is sufficient. "[T]he polestar of the discovery rule is not that plaintiff's actual knowledge . . . but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff."[51] In other words, "the discovery rule charges [plaintiff] with the knowledge that it would have obtained through a reasonable investigation from the time that it was on notice that a reasonable investigation was necessary."[52] "So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; she cannot wait for the facts to find her."[53] Even "innuendos

---

[47] *Brd. of Regents v. Tomanio*, 446 U.S. 478, 492, 100 S.Ct. 1790, 1798 (1980).
[48] *Singleton v. City of New York*, 632 F.2d 185, 191-192 (2nd Cir. 1980).
[49] *Major*, 642 F.2d at 313.
[50] *Rotella v. Wood*, 528 U.S. 549, 555, 120 S.Ct. 1075, 1081 (2000).
[51] *Oshiver v. Levin, Fisbein*, 38 F.3d 1380, 1386 (3rd Cir. 1994); *Trustees of Op. Eng. v. Smith-Emery Co.*, 906 F.Supp.2d 1043, 1058 (C.D.Cal. 2012).
[52] *Raytheon Co. v. Indigo Sys. Corp.*, 653 F. Supp. 2d 677, 688 (E.D. Tex. 2009).
[53] *Platt Elec. Supply, Inc. v. EOFF Elec. Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008).

1  and rumors" of wrongdoing can "create a red flag" that causes a claim to accrue.[54]
2  "[W]here a party has reason to at least suspect that a type of wrongdoing had injured
3  them, the statute begins to run and that party must either conduct a reasonable
4  investigation into his injury [and file suit] or risk losing his right of action."[55]

5  Applying those principles here is an easy case. The Funds do not contest that
6  they knew Southwest had several employees who arguably triggered the Funds' claim.
7  Indeed, the Memorandum attached to the Funds' Complaint says that Southwest had 10
8  such employees,[56] while another draft of the same document (also supplied by the
9  Funds) said Southwest had as many as 200 employees.[57] The Funds likewise knew that
10 they were not paid for services performed by Southwest's employees. Indeed, the Funds
11 explicitly acknowledged that Southwest only "made payments . . . for months where
12 the Plaintiff used the services of [union] workers."[58] Thus, the Funds should have
13 known of their purported claim as each payment was due but not received.

14 But in reality, this case does not turn on the discovery rule. The Funds never
15 dispute that even before the audit they knew Southwest was not paying the Funds for
16 services performed by Southwest's own employees. On May 22, 2015, the Funds were
17 explicitly provided with a ledger identifying several individual Southwest employees for
18 whom the Funds were purportedly entitled to be paid. The Funds did not yet know the
19 employees' names, but they did not need to. The ledger (showing job title, hours,
20 wages, and other related information) already constituted absolute proof that Southwest
21 had employees for whom it was not paying the Funds.[59] Even so, the Funds obtained the
22 employees' names as of October 26, 2015, more than one year before the Funds filed
23 suit. As such, their claims are time barred.

---

[54] *Raytheon Co. v. Indigo Sys. Corp.*, 653 F. Supp. 2d 677, 684 (E.D. Tex. 2009).
[55] *Raytheon Co. v. Indigo sys. Corp.*, 653 F. Supp. 2d 677, 687-688 (E.D. Tex. 2009) (quoting *Garamendi v. SDI Vendome*, 276 F. Supp. 2d 1030, 1039 (C.D. Cal. 2003).
[56] Funds' Complaint Exhibit 1 p. 15 (2:17-cv-00198-DJH, Doc. 1-1).
[57] Ex. A to Wilson Decl. p. 14 (Doc. 32-1).
[58] Response 4:23-5:1 (Doc 33).
[59] SOF ¶ 5.

CORE/3008422.0002/132639229.1

Citing *Jumbo Markets*, the Funds incorrectly argue that their claim could not accrue until they completed their audit. Multiple courts have already considered and "reject[ed] plaintiffs' argument that they had no reason to know of any delinquent contributions until after the audit . . . was complete. . . . At a minimum, plaintiffs had reason to know of missing contributions once they decided that an audit was necessary, not after the audit was completed."[60] Moreover, as Southwest explained and the Funds did not refute, the Funds' onsite audit occurred October 26, 2015 (more than a year before the Funds filed suit), so even if the claim did not accrue until the audit occurred, claim is barred because the audit occurred more than a year before the Funds filed suit.

### 3.  The Funds are not entitled to discovery under Rule 56(d).

The Funds are also wrong to argue that they need a continuance to seek discovery regarding Tom Allen's corporate authority when signing the Memorandum. "A party invoking [Rule 56(d)] must . . . [demonstrate] how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the [motion for summary judgment]."[61] "[T]he mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation."[62] To qualify for such a continuance, the Funds must demonstrate "how additional discovery will enable it to rebut the movant's allegations" and also "provide reasons why the non-moving party cannot present [those] facts [now]."[63] No such discovery is needed here.

The sole issue in this case is whether the Funds knew or should have known they had a claim before October 28, 2016 (one year before filing suit). Although Tom Allen did not have authority to sign the Memorandum, that issue is not relevant to this motion.

---

[60] *Trustees of Op. Eng. v. Smith-Emery Co.*, 906 F.Supp.2d 1043, 1058 (C.D.Cal. 2012); *Locals 302 v. Meko Constr. Inc*., 2012 WL 3812025 *2-3 (W.D. 2010).
[61] *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984).
[62] *Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7, 21-22 (D.D.C. 2009) (citations omitted).
[63] *Richardson v. Nat'l Rifle Assoc.*, 871 F. Supp. 499, 501-02 (D.D.C. 1994).

CORE/3008422.0002/132639229.1

11

1  In fact, Southwest filed its amended motion specifically to eliminate any reference to
2  Tom Allen's authority so that 56(d) discovery would not be necessary. In filing that
3  motion, Southwest reused prior declarations, which mentioned Allen's lack of authority,
4  but the motion and statement of facts solely address the statute of limitation, so there is
5  no reason to delay summary judgment to address Allen's authority.

6  Significantly, the Funds are not seeking any discovery regarding the statute of
7  limitation, so there is no reason to grant the continuance. Indeed, answering the statute-
8  of-limitation question is peculiarly within the Funds' knowledge. They are the only ones
9  who can identify the date that they *first knew* the basis for their claim, so they do not
10 need discovery. Southwest has presented evidence that the Funds knew of their claim *at*
11 *least* more than a year before this lawsuit was filed. The Funds never controvert that
12 evidence, so their claim is time barred.

13 **4.   Conclusion.**

14 The Funds' claim arises out of an "employment contract" under Arizona law, and
15 Arizona's one-year limitation is consistent with federal law. The Funds present no
16 evidence to refute that they *had reason to know* of their claim by May 2015 (when their
17 received the redacted employment ledger), and they *knew everything* for their claim by
18 at least October 26, 2015, yet they did not file suit until October 28, 2015.

19 This motion does not address Tom Allen's corporate authority, so there is no
20 need to grant a 54(d) continuance for the Funds to pursue evidence regarding that issue.
21 Accordingly, Southwest is entitled to and respectfully requests that the Court grant
22 summary judgment dismissing the Funds' claims.

23 RESPECTFULLY SUBMITTED  28th  day of April 2017.

24 **STINSON LEONARD STREET LLP**

25 By:  /s/ James E. Holland, Jr.
26       James E. Holland, Jr.
         Javier Torres
27       1850 North Central Avenue, Suite 2100
         Phoenix, Arizona 85004-4584
28       Attorneys for Southwest Industrial Rigging

CORE/3008422.0002/132639229.1

12

# CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017 I caused the foregoing document to be filed electronically with the Clerk of Court through ECF; and that ECF will send an e-notice of the electronic filing to:

Daniel Shanley
DeCarlo & Shanley
533 South Freemont Avenue, Ninth Floor
Los Angeles, California 90071-1706
dshanley@deconsel.com

/s/ Celia Munguia

CORE/3008422.0002/132639229.1