James E. Holland, Jr. (021826)
Javier Torres (032397)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email:  james.holland@stinson.com
        javier.torres@stinson.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging,<br><br>Plaintiff,<br><br>v.<br><br>Board of Trustees for the Southwest Carpenter's Southwest Trust; et al.,<br><br>Defendants. | No. 2:16-cv-03799<br>No. 2:17-cv-00198<br><br>**MOTION FOR SUMMARY JUDGMENT (NO FIDUCIARY DUTY)**<br><br>(Assigned to the Honorable Diane J. Humetawa) |
| Board of Trustees for the Southwest Carpenter's Southwest Trust; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging, et al.<br><br>Defendants. | |

Harry Kent Baker, Scott William Miller, and James Douglas Wilson (the "Employees") move for summary judgment because they do not owe any fiduciary duties to the Carpenters Union's Vacation/Annuity Plan (the "Fund"), and even if they did, they did not breach any such duties. The Union's health, vacation, training, and pension funds (the "Funds") sued HKB Inc. dba Southwest Industrial Rigging ("Southwest") in its First Claim because Southwest did not pay the Funds for services

CORE/3008422.0002/133581228.2

that were provided by Southwest's nonunion employees. In the Complaint's Second Claim, the Fund sued Southwest's Employees for allegedly breaching a purported fiduciary duty to ensure the Fund was paid. But the Employees do not owe the Fund any fiduciary duties. Indeed, the Employees have no ties whatever with the Fund. They just happened to work for Southwest at a time when the Fund claims to be owed money under a purported union contract. But that happenstance does not create a fiduciary duty. "[O]ne needs to have some relationship to the plan itself, not merely control of some small amount of purported assets of the plan, before one is a fiduciary."[1]

The Fund's complaint is a bit vague, but that should not prevent summary judgment. The Fund appears to primarily allege that the Employees caused Southwest to withhold a portion of each employee's wages but then absconded with those withheld wages. The Second Claim might also be construed as complaining that the Employees simply failed to pay the Fund with Southwest's money. Thus, the Complaint does not clarify where the Employees were supposed to get the money to pay the Fund or what action the Employees purportedly took. The Complaint could be interpreted as alleging active malfeasance regarding employee wages (withholding the employees' wages and diverting them to other purposes), or simple nonfeasance with Southwest's bank account (failing to pay the Fund with Southwest's money). Either way, the outcome should be same. The Employees never withheld or diverted wages intended for the Fund, and they never had a duty to pay the Fund with Southwest's money. For both these reasons, summary judgment should be granted.

**1. Facts: the Employees never knew about the Fund's purported right to payment.**

Southwest is a construction-related company that, among other things, performs maintenance and repair work at the Palo Verde Nuclear Generating Station just west of Phoenix (the "Power Plant") twice a year for 4-6 weeks at a time.[2] Southwest had used

---

[1] *Witt v. Allstate Ins. Co.*, 50 F.3d 536, 537 (8th Cir. 1995).
[2] Statement of Facts ("SOF") ¶ 1.

CORE/3008422.0002/133581228.2

carpenters from the Southwest Regional Council of Carpenters (the "Union") to supplement its workforce at the Power Plant.[3]

The Funds collect payment for various health, vacation, pension, and training plans for Union members' benefits. Southwest had a history of temporarily hiring Union workers to supplement its workforce at the Power Plant without signing a union contract.[4] Rather, Southwest simply employed the individual Union carpenters on a piecemeal basis, paying the carpenters (and the Funds) for the work actually performed, but having no obligation beyond the temporary work provided at the Power Plant.[5] Southwest paid the Funds for work performed by Union carpenters during the 4-6 weeks that the Southwest performed maintenance work on the Power Plant, but Southwest never paid the Funds anything else.[6]

Several years after Southwest first began hiring and paying for services provided by the Union's carpenters, the Funds performed an "audit" regarding Southwest's payments to the Funds.[7] As a result of the audit, the Funds demanded that Southwest make additional payments in excess of $490,000, for various health-care, training, vacation, and pension funds.[8] This payment demand was not based upon any work performed by the Union's carpenters.[9] Instead, the Funds demanded payment solely based upon services performed by Southwest's own nonunion employees.[10] Southwest's employees are not members of and have no affiliation with the Union,[11] but the Funds claimed that Tom Allen, a salesman for Southwest, had—unbeknownst to Southwest's management or the Employees—signed a document titled "Southwest Regional Council

---

[3] SOF ¶ 2.
[4] SOF ¶ 2.
[5] SOF ¶ 3.
[6] Controverting Statement of Facts in Opposition to Plaintiff's Amended Motion for Summary Judgment re: Statute of Limitation (Doc 34) 5:15-20.
[7] SOF ¶ 4.
[8] SOF ¶ 5.
[9] SOF ¶ 6.
[10] SOF ¶ 7.
[11] SOF ¶ 8.

CORE/3008422.0002/133581228.2

1  of Carpenters – Carpenters Memorandum 2012-2016" (the "Memorandum"). The Funds
2  interpreted the Memorandum as requiring Southwest to pay the Funds for work
3  performed by Southwest nonunion employees.[12]  In other words, the Funds claim that
4  because a Southwest salesman hired union carpenters for temporary work at the Power
5  Plant, Southwest is required to pay the Funds for all work performed year-round by
6  Southwest's nonunion employees.

7  Southwest paid the Funds for all services rendered by the Union carpenters, but
8  not for work performed by Southwest's nonunion employees.[13] Indeed, Southwest's
9  Employees never even knew that the Funds were claiming a right to payment for
10 services performed by Southwest's nonunion employees until after the Funds completed
11 their audit—long after the work was performed and the nonunion workers had been
12 paid.[14] For this reason (among others), Southwest did not make employer contributions
13 to the Funds for services performed by Southwest's nonunion employees, nor did
14 Southwest withhold any money for the Funds from nonunion employee wages.[15]

15 Southwest maintains that it is not bound by the Memorandum, which necessarily
16 means that the Fund has no claim against Southwest's Employees. This motion,
17 however, disposes of the Fund's claim based solely on the legal principle that
18 Southwest's Employees never owed a fiduciary duty to collect or pay money to the
19 Fund for work performed by Southwest's nonunion employees.

20 **2.    The Employees never took wages that should have been paid to the Fund.**

21 The Fund's fiduciary-duty claim seems to hinge upon the following factual
22 allegations: (1) the Employees withheld money from worker's paycheck to be paid to
23 the Fund, but (2) the Employees diverted those withheld wages to other purposes. The
24 claim suffers from a fatal flaw: the Employees never withheld any money from
25 employee wages to be paid to the Fund. Indeed, the Employees never even knew about

---

[12] SOF ¶ 9.
[13] SOF ¶ 10.
[14] SOF ¶ 11.
[15] SOF ¶¶ 12, 13.

CORE/3008422.0002/133581228.2

4

1  the Fund's purported claim, so they had no reason to withhold the money.[16]

2  In fact, neither Southwest nor its Employees could have withheld money from
3  the employees' wages even if they had wanted to. The parties agree that this lawsuit
4  addresses payment for Southwest's nonunion employees, not payment for union
5  members.[17] Those employees were not signatories to the union's contracts, so they
6  never agreed to have a portion of their wages diverted to the union Fund. Since the
7  employees had not personally agreed to have a portion of their wages withheld for the
8  Fund, Southwest could not withhold their wages. Indeed, such withholding would be
9  illegal: "No employer may withhold or divert any portion of an employee's wages
10 unless . . . the employer has prior written authorization from the employee."[18] Thus,
11 even if the Union's Memorandum was binding on Southwest (it was not), Southwest
12 could not unilaterally make its nonunion employees pay a portion of their wages to the
13 Fund. Not surprisingly, Southwest's nonunion employees never gave Southwest
14 permission to withhold a portion of their wages to pay to the Fund.[19] For all these
15 reasons, the Employees did not withhold any wages from Southwest's nonunion
16 employees. Without that lynchpin allegation, the Fund has no basis for claiming that the
17 Employees diverted withheld wages.

18 **3.    Neither Southwest nor its Employees owe fiduciary duties to the Fund.**

19 The Fund likewise has no basis for alleging a fiduciary-duty claim regarding any
20 purported obligation to pay the Fund with Southwest's money. Although Southwest
21 vehemently disputes it, the Court can assume for purposes of this argument that

---

[16] SOF ¶ 11.
[17] Southwest withheld money from *union* workers' wages to pay to the Fund, and Southwest actually paid that money to the Fund. The Fund has never argued otherwise. SOF ¶ 6-7, 14; Opposition to Plaintiff's Amended Motion for Summary Judgment re: Statute of Limitation (Doc 33) 3:20-21; 5:14-15; Controverting Statement of Facts in Opposition to Plaintiff's Amended Motion for Summary Judgment re: Statute of Limitation (Doc 34) 3:26-6:3.
[18] A.R.S. § 23-341.
[19] SOF ¶ 12.

CORE/3008422.0002/133581228.2

1 Southwest was obligated under the Memorandum to pay the Fund. That assumption,
2 however, merely creates a contract claim against Southwest; it would not give rise to a
3 fiduciary-duty claim against the Employees. Indeed, it is legally impossible to impose a
4 fiduciary duty of strict loyalty on employees of a corporate employer because
5 employees already owe a fiduciary duty to their employer, so they cannot also show
6 undeviating loyalty to the Fund. Finally, the fiduciary-duty claim fails because the
7 Employees did not take any action regarding plan as required to trigger a fiduciary duty.
8 For all these reasons, the Fund cannot assert a fiduciary-duty claim against the
9 Employees.

### *A.  The Fund merely has a contract claim, not a fiduciary-duty claim.*

The Fund has mere contract claims against Southwest; they do not have a claim for fiduciary duty. "[A] person is a fiduciary [under ERISA] . . . to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."[20] "Generally, employers owe no fiduciary duty toward plan beneficiaries under ERISA."[21] Moreover, it is widely recognized as "noncontroversial" that a person's "status as [an] employer, standing alone, is not enough to confer fiduciary status."[22] Indeed, an individual "with no pre-existing fiduciary relationship to the plan [is] not a fiduciary merely because it possessed or controlled assets to which the plan asserted a claim."[23]

In other words, the mere breach of a purported obligation to pay an ERISA plan does not create a fiduciary duty. This principle is "well supported by the law of trusts,"[24] which Congress expressly invoked "to define the ... fiduciary duty."[25] Thus,

---

[20] 29 U.S.C. § 1002(21)(A).
[21] *In re. Luna*, 406 F.3d 1192, 1205 (10th Cir. 2005) (quoting *Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir. 1991)).
[22] *In re. Luna*, 406 F.3d 1192, 1205 (10th Cir. 2005).
[23] *S. Council of Indus. Workers v. Ford*, 83 F.3d 966, 968-69 (8th Cir. 1996).
[24] *In re. Luna*, 406 F.3d 1192, 1204 (10th Cir. 2005).
[25] *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991).

CORE/3008422.0002/133581228.2

6

"[a]n employee pension plan that identifies a receivable as a type of asset does not thereby create fiduciary obligations on the part of persons with control over the actual funds out of which obligors might satisfy these outstanding claims."[26] Put another way, "a delinquent employer-contributor is merely a debtor, not a fiduciary."[27]

The Fund's complaint and the plans themselves further affirm that the Fund's claim is solely contractual. Under common-law trust principles, if the agreement provides for the payment of interest or late fees for delayed payment, it is virtually certain that the party's rights and obligations are defined solely by contract, not by fiduciary duty. When "there is an understanding between the parties that the person to whom funds are transferred is to pay 'interest' thereon . . . it becomes close to certain that the relationship is a debt rather than a trust."[28] The Fund requires employers to pay interest and late fees for untimely contributions, and the Fund seeks payment of those amounts in the Complaint.[29] Thus, it is "close to certain" that no fiduciary duties are implicated in this case.

### B. The Fund does not own the money in Southwest's coffers, so Fund assets are not implicated as required to trigger a fiduciary duty.

Even if we assume that a breach of the Memorandum could create a fiduciary claim (it cannot), the Fund does not have a fiduciary claim here because ERISA only creates a fiduciary duty for management or disposition of *plan* assets.[30] Money in Southwest's bank account (assuming such money even exists) is not a plan asset. Rather, the Fund merely owns a claim against Southwest—a chose in action. The Fund may have a receivable or hope of payment from Southwest, but it does not own the cash in Southwest's possession.[31] Moreover, the outcome of the Fund's claim against

---

[26] *In re. Luna*, 406 F.3d 1192, 1204 (10th Cir. 2005) (quoting *ITPE Pension Fund v. Hall*, 334 f.3d 1011, 1016 (11th Cir. 2003)).
[27] *In re. Luna*, 406 F.3d 1192, 1204 (10th Cir. 2005) (citing Restatement (Third) of Trusts § 5(i) and cmt. i)
[28] Restatement 3d of Trusts § 5 cmt. k.
[29] 2:17-cv-00198-DJH, Dkt. 1 at 9:8.
[30] 29 U.S.C. § 1002(21)(A).
[31] *In re. Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005).

CORE/3008422.0002/133581228.2

1 Southwest is far from certain. As explained in the Motion to Transfer Venue, and other
2 filings in this case, Southwest has several defenses that are yet to be adjudicated (i.e.
3 statute of limitation, lack of assent, estoppel, etc.).[32] Even if the Fund can overcome
4 those defenses and obtain a ruling in their favor, it still would not own Southwest's
5 money; it would instead own a judgment against Southwest. Only if the Fund prevails in
6 Court and collects on its judgment will it actually own Southwest's money.

7 This principle is explained by the law of trusts, which Congress expressly
8 adopted when defining ERISA's fiduciary duties.[33] "A trust arises as to the amounts
9 deducted as soon as they are either set aside by the employer for the employee's
10 purposes or paid over to another person for those purposes. Until then, the employer's
11 obligation is merely a debt, with the 'obligee' (the employer or other person) holding a
12 chose in action [not the money to pay the purported obligation] in trust."[34] For these
13 reasons, the Employees' "decision to use their limited funds to pay other business
14 expenses rather than to make contributions to the Funds [is] a business decision, not a
15 breach of fiduciary duty."[35]

### C. Southwest's Employees cannot owe fiduciary duties to the Funds without breaching their fiduciary duties to Southwest.

The Employees cannot owe fiduciary duties to the Funds for the additional reason that they already owe fiduciary duties to Southwest. Under common-law

---

[32] *See, e.g.*, Amended Motion for Summary Judgment (Statute of Limitation) (Doc. 31) (moving for summary judgment on the grounds that the Funds' claims "are barred by the one-year statute of limitation contained in A.R.S. § 12-541"); Opposition to Motion to Dismiss or Stay the Action (Doc. 19) (arguing that Funds' forum-selection clause is contrary to Arizona's public policy, and because "the ex-employee who purportedly signed the Memorandum on Southwest's behalf lacked the authority to do so, and everyone knew it."); 2:17-cv-00198-DJH Dkt. 11 at 14:17-18 ("Arizona law will govern questions of contract formation and whether the Funds claim is barred by the statute of limitation.").
[33] *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991).
[34] *In re. Luna*, 406 F.3d 1192, 1204 (10th Cir. 2005) (quoting Restatement (Third) of Trusts § 5 cmt. k).
[35] *In re. Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005).

CORE/3008422.0002/133581228.2

1  fiduciary principles adopted by Congress,[36] "[a] fiduciary is required to discharge its
2  duties solely in the interest of the participants and beneficiaries."[37] But Southwest's
3  Employees cannot act solely in the Fund's interests because they already owe a contrary
4  fiduciary duty to Southwest. Indeed, every employee owes a fiduciary duty of loyalty
5  and good faith to his/her employer.[38] Among other things, employees "ha[ve] a duty not
6  to deal [in their employment] on behalf of an adverse party in a transaction,"[39] yet that
7  is exactly what the Fund is urging here. Southwest has always maintained that it is not
8  bound by the union's contract and had no obligation to pay the Funds. So if Southwest's
9  Employees owe a fiduciary duty to the Fund to ensure payment to the Fund, then the
10 Employees are forced to act in direct contradiction and defiance of Southwest's best
11 interests. Nothing in ERISA suggests that Congress intended to eviscerate the fiduciary
12 duties owed by an employee to his/her employer just because an ERISA plan asserts a
13 claim for payment from an employer. Indeed, the Ninth Circuit (and every other circuit)
14 has concluded that no fiduciary duty can be owed to the Fund that would conflict with
15 an agent's preexisting duty to his/her principal. "Imposing such a status . . . would place
16 these [agents] in the 'untenable position' of owing fiduciary duties to both their
17 [principal] and the ERISA plans. . . . Congress did not intend to extend ERISA's
18 fiduciary status that far."[40]

### D. The Employees do not control or manage plan assets.

20 The Fund's fiduciary-duty claims fail for the additional reason that the
21 Employees never exercised control regarding the Fund's assets. The Fund is obviously
22 trying to trigger a fiduciary duty based upon a statutory provision regarding the

---

[36] *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991) (Congress adopted the common law of trusts for fiduciary duties under ERISA).
[37] *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991).
[38] Restatement 3d of Agency § 1.01 cmt. e ("If the relationship between two persons is one of agency . . . the agent owes a fiduciary obligation to the principal.")
[39] Restatement 3d of Agency §8.03
[40] *Hotel Employees v. Genter*, 50 F.3d 719, 723 (9th Cir. 1995); *S. Council of Indus. Workers v. Ford*, 83 F.3d 966, 968 (8th Cir. 1996).

CORE/3008422.0002/133581228.2

1  "management or disposition of the assets."[41] But that statutory provision is not triggered
2  by the Employees' acts. Federal "courts have [uniformly] noted that the 'management
3  or disposition' language 'refers to the common transactions in dealing with a *pool* of
4  assets: selecting investments, exchanging one instrument or asset for another, and so
5  on.'"[42] The Fund does not even attempt to allege that the Employees controlled an asset
6  pool, nor do they attempt to imply that the Employees selected investments or
7  exchanged assets for that pool. Thus, there is simply no basis for alleging that the
8  Employees were acting in a fiduciary capacity.

9  Even if the duty could be triggered by a single receivable, rather than a pool of
10 assets, the Employees did not exercise control over that asset. Under federal regulations
11 interpreting the ERISA statute, individuals acting as administrative staff for their
12 employers do not owe fiduciary duties to ERISA plans. "Persons who have 'no power to
13 make any decisions as to plan policy, interpretations, practices or procedures,' but
14 instead who perform only 'administrative' or 'ministerial functions' . . . are not
15 fiduciary under ERISA."[43] The Fund does not allege that the Employees made policy
16 decisions of whether or not to execute ERISA agreement or where to invest the Fund. It
17 merely alleges that the Employees failed to pay the Fund for contractual obligations that
18 purportedly already existed. But the purported discretion to not pay a debt cannot trigger
19 liability. The Employees "had no duty other than to make . . . contributions, and no
20 discretion other than to fail to make those required contributions. The mere discretion
21 whether to pay debts owed to an employee benefit plan, however, does not suffice to
22 confer fiduciary statutes under ERISA."[44]

---

[41] 29 U.S.C. § 1002(21)(A).
[42] *In re. Luna*, 406 F.3d 1192, 1204 (10th Cir. 2005) (emphasis added; quoting *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28, (2d Cir. 2002); *Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1189 (7th Cir. 1994)).
[43] *In re. Luna*, 406 F.3d 1192, 1205 (10th Cir. 2005) (quoting 29 CFR § 2509.75-8 at D-2)).
[44] *In re. Luna*, 406 F.3d 1192, 1206 (10th Cir. 2005) (citing *Bd. of Trustees of Teamsters v. Foodtown, Inc*., 296 F.3d 164, 174 (3d Cir. 2002) (where employer owed money to multi-employer pension fund, employer was not fiduciary because it play no role in the

CORE/3008422.0002/133581228.2

The facts are even more compelling in this case because neither Southwest nor its Employees knew that the Fund claimed it was owed money. Indeed, they did not even know that Southwest had purportedly executed a union contract. This lack of knowledge precludes the creation of a fiduciary duty. As stated previously, Congress directed the courts to follow the law of trusts when addressing ERISA's fiduciary provisions. Under those established principles, a person cannot owe a fiduciary duty without knowing that such duties may exist. "[A] person who has not accepted the office cannot be compelled to act as trustee [i.e. owe a fiduciary duty]."[45] And by the same logic, individuals who never accept the position cannot be held liable for purportedly breaching fiduciary duties.[46] In this case, the Employees never knew that the Fund purported to claim a right to payment, nor did they know that they were purportedly controlling money that the Fund claimed as their own. The Fund does not even try to allege otherwise. Thus, the Fund cannot assert fiduciary-duty claims against the Employees.

The Employees are not exercising control over the Fund's assets for the additional reason that the Fund's asset right now is merely a *claim* for money, not the money itself. "It is the Trustees, not the [Employees] that exercise control over [that claim],"[47] and the claim "is like the claims of the other general creditors of the employer."[48] The trustees have already demonstrated that they alone control their claim—they filed this lawsuit and are pursuing it in their own name. Since the Employees do not control the Trust's claim against Southwest, they do not control the

---

management or investment of assets); *Laborers' Pension Fund v. Titgen Concrete Concrete*, 709 F.Supp. 140, 145 (N.D. Ill. 1989) (in case alleging employer failed to make contributions to funds, "this court would be surprised to learn that [employer] holds any authority, discretionary control, or responsibility with respect to management or administration of the plaintiffs' funds or assets.").
[45] Restatement 3d of Trusts § 35 cmt. a (citing *McCarthy v. Pousen*, 219 Ca. Rptr. 375 (App. 1985).
[46] Restatement 3d of Trusts § 35 cmt. a.
[47] *In re. Luna*, 406 F.3d 1192, 1205 (10th Cir. 2005).
[48] *In re. Luna*, 406 F.3d 1192, 1205 n. 11 (quoting Restatement (Third) of Trusts § 5 cmt. k).

CORE/3008422.0002/133581228.2

11

Fund's asset, so they owe no fiduciary duty to the Fund.

### E. The Employees did not take action to trigger a fiduciary duty.

"ERISA permits suits for breach of fiduciary duty only against persons *who act as a fiduciary with respect to a plan or trust*."[49] Southwest's Employees did not act at all—they never even knew that the Fund's claim existed. Thus, rather than suing the Employees for their actions, the Fund is instead suing the Employees for their inaction (failing to pay the Fund). In so doing, the Fund turns the analysis on its head, alleging that the Employees became fiduciaries by doing nothing.

Even if inaction was sufficient to trigger liability, the Fund must prove more in this case. The Employees can only have a fiduciary duty to the Fund if they exercised discretionary authority *over the ERISA plan*. Exercising discretion over *the Employer* is not enough. Indeed, even corporate directors who have power to decide whether a corporate employer will make contributions to ERISA retirement plans are not fiduciaries unless they were "exercis[ing] discretionary authority over the management of the plan."[50] This is true "even when [the board's powers are] coupled with other powers, such as that to modify the plan and to decide whether to [pay] matching contributions under the plan."[51] In this case, the Fund only alleges that the Employees exercised authority over Southwest (the employer), not over the ERISA plan. Thus, the Fund does not have a valid fiduciary-duty claim.

### F. Federal courts routinely reject fiduciary-duty claims based on claims of nonpayment.

All of the foregoing principles can be distilled to one simple premise: "[O]ne needs to have some relationship to the plan itself, not merely control of some small amount of purported assets of the plan, before one is a fiduciary. . . . [M]erely possessing or controlling assets to which the Fund asserted a claim [does not create] a

---

[49] *Acosta v. Pacific Enterprises*, 950 F.2d 611 (9th Cir. 1991) (emphasis added)
[50] *Carr v. Inter. Game Tech.*, 770 F.Supp. 2d 1080, 1090-91 (D. Nev. 2011).
[51] *Carr v. Inter. Game Tech.*, 770 F.Supp. 2d 1080, 1090-91 (D. Nev. 2011).

CORE/3008422.0002/133581228.2

fiduciary relationship."[52] The relevant principles have been repeatedly illustrated when ERISA health plans sue insurers and attorneys for failing to pay the plans after receiving settlement proceeds from bodily injury claims. In each case, the ERISA plans assert a subrogation claim to be reimbursed from the settlement proceeds to cover health benefits paid by the plan. In each instance, the plan beneficiary (like Southwest in this case) has a purported contractual obligation to pay the fund from the injury settlement. Also in each instance, the ERISA plan sues a nonparty to the contract (like the Employees), claiming that the defendant exercised "management" or "control" over funds owed to the plan. The courts uniformly grant summary judgment against the plans in these cases, concluding that neither the plaintiff's attorney, the insurer, nor any other third party that held the money owes fiduciary duties to the plans. The courts' reasoning echoes the principles outlined above:

- "[W]hat the Trust Fund had by virtue of its agreement with [the plan beneficiary] was a contractual 'claim' for reimbursement of . . . medical expenses it has paid. . . . That did not automatically convert the [settlement funds] into assets of the Trust Fund."[53]

- The defendant's duties to others "could conflict with a fiduciary duty to an ERISA plan."[54]

- "An entity which assumes discretionary authority or control over plan assets will not be considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of policies, practices, and procedures."[55]

- To be a fiduciary, "one needs to have some relationship to the plan itself, not merely control of some small amount of purported assets of the plan."[56]

- "[A] bank acting merely as depository for trust fund, whose responsibility

---

[52] *Witt v. Allstate Ins. Co.*, 50 F.3d 536, 537 (8th Cir. 1995).
[53] *Chapman v. Klemick*, 3 F.3d 1508, 1510 (11th Cir. 1993).
[54] *Chapman v. Klemick*, 3 F.3d 1508, 1510 (11th Cir. 1993).
[55] *Chapman v. Klemick*, 3 F.3d 1508, 1510 (11th Cir. 1993).
[56] *Witt v. Allstate Ins. Co.*, 50 F.3d 536, 537 (8th Cir. 1995).

CORE/3008422.0002/133581228.2

13

did not include discretionary advisor activities, [is] not a fiduciary."[57] In fact, courts refuse to impose a fiduciary duty on these third parties even when the defendant expressly acknowledged having received notice of the claim before the dispersing the funds.[58] "Because State Farm was not a party to the agreement between the Fund and its covered individuals, State Farm cannot be bound by that agreement."[59]

The Ninth Circuit approves of these cases[60] and likewise takes a skeptical view when ERISA plans seek to stretch the fiduciary duty. In *Nieto v. Ecker* the Ninth Circuit concluded that even an attorney hired by an ERISA plan to collect unpaid plan contributions was not subject to fiduciary duties under ERISA. The fund argued that by failing to collect those contributions, the attorney exercised control over and dissipated fund assets. There was little doubt that the lawyer retained an element of control and discretion when deciding how to pursue those claims.[61] Nevertheless, the Ninth Circuit concluded that such discretion and control was not adequate to create a fiduciary duty under ERISA: "[The Fund's] argument proves far too much. . . . Under this rationale, anyone performing services for an ERISA plan—be it an attorney, an accountant, a security guard or a janitor—would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized those assets."[62] "Plaintiffs' lawsuit against [the attorney] is essentially an attorney malpractice suit under state tort law. Absent an explicit directive from Congress, we may not recast it as a federal cause of action merely because [the claimants] happened to be plans

---

[57] *Ariz. State Carpenters Pension v. Citibank (Arizona)*, 125 F.3d 715, 720 (9th Cir. 1997) (citing *O'Toole . Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982)).
[58] *Trustees of Central States v. State Farm Mut. Auto. Ins.*, 17 F.3d 1081, 1084 (7th Cir. 1994); *S. Council of Indus. Workers v. Ford*, 83 F.3d 966, 968-69 (8th Cir. 1996).
[59] *Trustees of Central States v. State Farm Mut. Auto. Ins.*, 17 F.3d 1081, 1084 (7th Cir. 1994).
[60] *Hotel Employees v. Genter*, 50 F.3d 719, 723 (9th Cir. 1995) ("we agree with [*Chapman v. Klemick*, 3 F.3d 1508, 1511 (11th Cir. 1993)]").
[61] *Chapman v. Klemick*, 3 F.3d 1508, 1510 (11th Cir. 1993) (observing that the attorney in *Nieto* was "presumably given some measure of control over the trust assets he collected).
[62] *Nieto v. Ecker*, 845 F.2d 868, 870-71 (9th Cir. 1988).

CORE/3008422.0002/133581228.2

14

covered by ERISA."[63] Applying these principles, Southwest's Employees are complete strangers to the Fund's claim. In fact, they didn't even know that the Fund had a claim, so they are entitled to summary judgment of the fiduciary-duty claim.

**4. Conclusion.**

The Employees cannot owe a fiduciary duty for diverting wages that were withheld from employee paychecks because the Employees never withheld such wages. In fact, withholding money from the nonunion employee's paychecks would have been illegal.[64]

Similarly, the Employees cannot owe a fiduciary duty based upon Southwest's purported failure to pay the Fund because the Employees "need[ ] to have some relationship to the plan itself, not merely control of some small amount of purported assets of the plan, before [they are] fiduciar[ies]."[65] Indeed, if Southwest Employees owed a fiduciary duty toward the Fund, it would impermissibly conflict with the Employees' fiduciary duty toward Southwest. For all these reasons, the Court should grant summary judgment on the Second Claim in the Complaint

RESPECTFULLY SUBMITTED  26th  day of June 2017.

**STINSON LEONARD STREET LLP**

By: /s/ James E. Holland, Jr.
James E. Holland, Jr.
Javier Torres
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Attorneys for Defendants

---

[63] *Nieto v. Ecker*, 845 F.2d 868, 871-72 (9th Cir. 1988).
[64] A.R.S. § 23-341.
[65] *Witt v. Allstate Ins. Co.*, 50 F.3d 536, 537 (8th Cir. 1995).
CORE/3008422.0002/133581228.2

15

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2017 I caused the foregoing document to be filed electronically with the Clerk of Court through ECF; and that ECF will send an e-notice of the electronic filing to:

Daniel Shanley
DeCarlo & Shanley
533 South Freemont Avenue, Ninth Floor
Los Angeles, California 90071-1706
dshanley@deconsel.com

/s/ Celia Munguia

CORE/3008422.0002/133581228.2

16