1

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9    HKB Inc., an Arizona corporation doing        No. CV-16-03799-PHX-DJH
     business as Southwest Industrial Rigging,     No. CV-17-00198-PHX-DJH
10
                    Plaintiff,                      **ORDER**
11
     v.
12
     Board of Trustees for the Southwest
13   Carpenter's Southwest Trust, et al.,
14                  Defendants.

15   Board of Trustees for the Southwest
     Carpenter's Southwest Trust, et al.,
16
                    Consolidated Action
17                  Plaintiffs,
18   v.
19
     HKB Inc., an Arizona corporation doing
20   business as Southwest Industrial Rigging,
     et al.,
21
                    Consolidated Action
22                  Defendants.
23

24

25          This matter is before the Court on Defendants' Motion to Dismiss Pursuant to

26   FRCP 12(b)(3), (6), (7), or, In the Alternative, to Stay Action (Doc. 14).  Plaintiff HKB,

27   Inc. has filed an Opposition to Motion to Dismiss or Stay the Action (Doc. 19) and

28   Defendants have filed a Reply (Doc. 20).

# I. Background

## A. Arizona Action

Plaintiff initiated this action by filing a Complaint for Declaratory Judgment (Doc. 1) on November 2, 2016.  Plaintiff is a corporation duly incorporated under Arizona law with its principal place of business in Phoenix.  Plaintiff filed the action because "Defendants have, through multiple letters, asserted that Plaintiff owes Defendants an amount exceeding $493,643; Defendants claim this amount is owed by Plaintiff pursuant to a purported contract which is unenforceable against Plaintiff." (Doc. 1 at 2).[1]  Plaintiff asserts that Defendant Carpenters Southwest Administrative Corporation is a California Corporation, and Defendant Board of Trustees for the Carpenters Southwest Trusts is the acting trustee for Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund.  (Doc. 1 at 1).

For its factual allegations, Plaintiff alleges that the Southwest Regional Council of Carpenters (the "Union") is a labor organization with offices in various western cities. (Doc. 1 at 2).  Plaintiff contends that on August 22, 2013, Tom Allen, an employee of Plaintiff, and the Union signed a Memorandum Agreement that purported to specify certain conditions regarding Plaintiff's hiring of Union workers.  (*Id.*).  Plaintiff asserts that Mr. Allen, who was "only a salesman for Plaintiff," did not have authority to sign such documents for Plaintiff and Plaintiff made that known to Mr. Allen before he signed the Memorandum Agreement.  (*Id.*).  Plaintiff further alleges the Union had no reason to believe Mr. Allen was authorized to sign the Memorandum Agreement.  (*Id.*).  Plaintiff also alleges that after Mr. Allen signed the Memorandum Agreement, of which Plaintiff was initially unaware, Plaintiff reiterated to Mr. Allen that he did not have authority to bind Plaintiff by signing such contracts on Plaintiff's behalf.  (Doc. 1 at 2-3).  The

---

[1] The Court's citations to attachments and/or page numbers of filed documents correspond to the attachment numbers and/or page numbers generated by the district court's electronic filing system, not pre-printed attachment numbers and page numbers on the original documents.

1   Memorandum Agreement purports to incorporate by reference other documents that were
2   never provided to Mr. Allen or Plaintiff.  (Doc. 1 at 3).

3           Plaintiff states in the Complaint that it performs construction-related maintenance
4   and repair work at the Palo Verde Nuclear Generating Station (the "Power Plant") twice a
5   year for 4-6 weeks each time.  (Doc. 1 at 3).  Plaintiff had previously used carpenters
6   provided by the Union to perform some of its work at the Power Plant but had never been
7   required to sign the Memorandum Agreement or similar document.  (*Id.*).  Even after Mr.
8   Allen signed the Memorandum Agreement, and while Plaintiff was still unaware he had
9   done so, Plaintiff used Union carpenters to perform work at the Power Plant.  (*Id.*).  As it
10  had done in the past, Plaintiff paid Defendants for all services that were rendered by the
11  Union carpenters, including payment into funds for the carpenters' health care, training,
12  vacation, and pensions.  (*Id.*).

13          Plaintiff alleges that beginning in November 2015, several years after Plaintiff first
14  began hiring Union carpenters and more than two years after Mr. Allen signed the
15  Memorandum Agreement, "Defendants purported to perform an 'audit' regarding
16  Plaintiff's payments to Defendant."  (Doc. 1 at 3).  Based on the audit, Defendants
17  demanded that Plaintiff make additional payments of more than $490,000 for various
18  health care, training, vacation, and pension funds.  (*Id.*).  Plaintiff alleges that
19  Defendants' demand was not based on work performed by the Union carpenters but was
20  instead based solely on work performed by Plaintiff's own employees, who were not
21  members of or affiliated with the Union.  (*Id.* at 3-4).  According to Plaintiff, Defendants
22  claimed that one of the documents incorporated into the Memorandum Agreement
23  required Plaintiff to pay into Defendants' health care, training, vacation, and pension
24  funds for all work performed by Plaintiff's employees, even though Plaintiff's employees
25  were not Union members and received no Union benefits.  (*Id.* at 4).  Plaintiff alleges that
26  during the time it used Union carpenters, Defendant never notified Plaintiff it was liable
27  for any of the payments Defendant ultimately demanded as a result of the audits.  (*Id.*).

28          Based on these factual allegations, Plaintiff asserts three claims for relief.  In its

first claim, Plaintiff alleges there is no binding agreement.  (Doc. 1 at 4-5).  Plaintiff contends that because Mr. Allen had no authority to execute the Memorandum Agreement on Plaintiff's behalf, the agreement is not enforceable and Plaintiff is not bound by its terms.

In the second claim, Plaintiff alleges that pursuant to the doctrine of reasonable expectations, Plaintiff is not liable for the payments Defendants are claiming.  Plaintiff contends it had no reasonable expectation "that by hiring Union contractors for temporary work at the Power Plant[,] Plaintiff would be required to pay Defendants' health care, training, vacation, and pension funds for all work performed year round by Plaintiff's full-time permanent employees."  (Doc. 1 at 5).  Plaintiff also alleges that its prior course of business with Defendants was such that Plaintiff had no reasonable expectation of the payments now demanded by Defendants.

In its third claim for relief, Plaintiff contends that Defendants' request for compensation is time-barred.  (Doc. 1 at 6).  Plaintiff alleges that Arizona's statute of limitations pertaining to employment claims, which provides for a one-year limitations period, governs here.  Plaintiff contends that Defendants "have known or should have known for at least three years" that Plaintiff was not paying the amounts it allegedly owed.  As a result, according to Plaintiff, Defendants' pursuit of these payments is barred by A.R.S. § 12-541.

As noted above, Plaintiff requests declaratory relief.  Plaintiff first seeks a declaration that the Memorandum Agreement and its accompanying documents are not enforceable against Plaintiff.  Plaintiff also seeks a declaration that Plaintiff's purported obligation to pay Defendants' health care, training, vacation, and pension funds for work performed by Plaintiff's full-time permanent employees is unenforceable because it exceeds Plaintiff's reasonable expectations.  Plaintiff also seeks a declaration that Defendants' claim for payments is barred by the applicable statute of limitations and that Plaintiff has no present or future obligations under the Memorandum Agreement.  Lastly, Plaintiff seeks attorney fees and costs as permitted by law.

## B. California Action

Shortly before Plaintiff HKB, Inc. filed the instant action, Defendants filed an action against HKB, Inc., and three of its employees, in the Central District of California. (Doc. 23-1). On January 17, 2017, the Central District of California Court granted HKB, Inc.'s motion to transfer that action to the District of Arizona. (Doc. 23-1 at 10). The California Court summarized the case as follows:

> Plaintiffs filed this action seeking ERISA benefit contributions allegedly owed under a collective bargaining agreement ("CBA"). (Complaint, Docket No. 1, ¶ 1). Defendant HKB, Inc., doing business as Southwest Industrial Rigging, is alleged to have executed a collective bargaining agreement with the Southwest Regional Council of Carpenters ("SWRCC"), a union, in 2013. (*Id.* ¶ 15). The CBA and attached agreements provided that Plaintiffs would become signatories and administrators for various trust agreements and funds, which granted the union members certain benefits. (*Id.* ¶¶ 15-20). As relevant here, the agreements each contained forum selection clauses stating that all litigation related to the agreements would take place in Los Angeles County, California. (Declaration of Daniel M. Shanley, Docket No. 17, Ex. 2).

> For three years after the CBA was signed, Defendant HKB used the services of SWRCC-represented carpenters and filed required reports with Plaintiffs concerning hours worked by such carpenters. (Declaration of Richard Watanabe, Docket No. 16-1, ¶¶ 5, 6). In 2016, Plaintiffs audited HKB's contributions to the various trust funds and found the payments delinquent. (*Id.* ¶ 4). In response to a demand letter sent by Plaintiffs after the audit, HKB asserted that the person who had signed the CBA on behalf of HKB did not have the authority to do so, and that HKB had never known about the agreements. (Shanley Decl., Ex. 5). After HKB refused to make any further payments, this action followed.

(Doc. 23-1 at 3). The Court explained that after the California action was filed, "HKB filed suit in Arizona federal court seeking to have the CBA invalidated on state law grounds." (*Id.*).

The Court considered several factors in deciding whether to transfer the California action to Arizona including the plaintiffs' choice of forum, convenience to the parties and witnesses, expense of litigation, familiarity with governing law, and the forum selection clause. (Doc. 23-1 at 6-10). The Court determined that "transfer is appropriate here

- 5 -

1    because the Arizona District Court is the most appropriate forum to determine the [sic] all
2    the issues here, including whether the CBA was ratified and whether Arizona law
3    applies." (Doc. 23-1 at 10).

4        After the California action was transferred to Arizona, this Court granted HKB,
5    Inc.'s motion to consolidate the two actions. (Doc. 29). The Court found consolidation
6    was warranted because both actions involve common questions of law and fact and
7    because Defendants did not oppose the motion. (*Id.*)

8    **II. Motion to Dismiss**

9        Defendants seek dismissal of Plaintiff HKB, Inc.'s Complaint pursuant to Fed. R.
10   Civ. P. 12(b)(3) – improper venue, 12(b)(6) – failure to state a claim, and 12(b)(7) –
11   failure to join a party under Rule 19. Defendants argue that that this action should be
12   stayed and/or dismissed on four grounds. First, they argue this action violated the "first
13   to file rule" recognized by the Ninth Circuit, which mandates that the issues be heard in
14   the California action. (Doc. 14 at 2). Second, Defendants contend Plaintiff failed to join
15   the Union, a necessary party under Rule 19. (*Id.*). Third, Defendants argue that
16   Plaintiff's state law contract claims are preempted by the Labor Management Relations
17   Act ("LMRA"), 29 U.S.C. § 185, because federal law controls the interpretation of labor
18   agreements. (*Id.*). Fourth, Defendants contend that the forum selection clause in the
19   agreement between Plaintiff and the Union requires that any lawsuits be filed in state or
20   federal court in Los Angeles, California. (*Id.*).

21       In Plaintiff's Notice of California Court Ruling Re: Venue (Doc. 23), Plaintiff
22   asserts that the decision by the Central District of California disposed of two of
23   Defendants' arguments to stay or dismiss this action, specifically, their argument based
24   on the first to file rule and their forum selection clause argument. The Court agrees. The
25   decision transferring the California action to Arizona renders those arguments moot.[2]
26   This Court will not re-visit the California Court's ruling that the District of Arizona is the
27   most appropriate forum to decide the issues presented by these consolidated cases.

28   _____

[2] Moreover, because the California Court has ruled and transferred the California case to Arizona, Defendants' alternative request to stay this action is also rendered moot.

Accordingly, the Court here will only consider two of Defendants' arguments in their motion to dismiss: first, whether the case should be dismissed because Plaintiff failed to join an indispensable party under Rule 19 and second, whether Plaintiff's claims should be dismissed because they are preempted by federal law.

### A.  Failure to Join Indispensable Party

Rule 12(b)(7) of the Federal Rules of Civil Procedure allows a party to seek dismissal of a case for "failure to join a party under Rule 19."  Rule 19 requires a three-step inquiry:

> 1. Is the absent party necessary (i.e., required to be joined if feasible under Rule 19(a)?
>
> 2. If so, is it feasible to order that the absent party be joined?
>
> 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. And Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing *EEIC v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005)).  "The failure to join a party under Rule 19 can only lead to dismissal of a suit where the court cannot obtain jurisdiction over the necessary party and that party is determined to be indispensable to the action."  *Camacho v. Major League Baseball*, 297 F.R.D. 457, 460 (S.D.Cal. 2013).  "'The Ninth Circuit has held that a court should grant a 12(b)(7) motion to dismiss only if the court determines that joinder would destroy jurisdiction and the nonjoined party is necessary and indispensable.'"  *Id.* (quoting *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F.Supp.2d 1136, 1141 (E.D.Cal. 2001).  In a Rule 12(b)(7) motion to dismiss, the moving party bears the burden to produce evidence in support of the motion.  *Id.* at 460-461; *Village of Hotvela Traditional Elders v. Indian Health Services*, 1 F.Supp.2d 1022, 1025 (D. Ariz. 1997).  Such a motion "demands a fact specific and practical inquiry."  *Camacho*, 297 F.R.D. at 461 (internal quotations and citations omitted).

Defendants argue that Plaintiff's Complaint should be dismissed because the Union is an indispensable party that Plaintiff failed to name as a defendant.  Defendants

contend that because the Union was a party to the Memorandum Agreement that Plaintiff is challenging, the Union is an indispensable party. Defendants reiterate in their Reply that the Complaint should be dismissed because Plaintiff failed to name the Union, an indispensable party, as a defendant. Plaintiff relies on legal authority supporting the principle that parties to a contract are indispensable in an action that challenges the contract.

Defendants' argument, however, falls short. As the above authority demonstrates, failure to join an indispensable party can only lead to dismissal if the court cannot obtain jurisdiction over the necessary party or if the court determines that joinder would destroy jurisdiction. Here, that standard is not satisfied. Defendants concede that the Union "operates in Arizona [ ], is subject to service of process and its joinder would not affect subject matter jurisdiction because Plaintiff's allegations against the [Union] would be the same as against the existing Defendants." (Doc. 14 at 8). Thus, even if the Court were to determine the Union is an indispensable party, Defendants have not satisfied the requirements for dismissal of the action under Rule 12(b)(7). The motion to dismiss on that basis will therefore be denied.

### B. Preemption

Next, Defendants seek dismissal of Plaintiff's second and third claims for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on preemption. A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint must contain a "short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The Court must interpret the facts alleged in the complaint in the light most favorable to the plaintiff, while also accepting all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

Section 301 of the LMRA, 29 U.S.C. § 185, "preempts all state-law causes of action evaluation of which requires interpretation of a labor contract's terms." *Miller v. AT & T Network Systems*, 850 F.2d 543, 545 (9th Cir. 1988) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). However, "[i]f a court can uphold state rights

without interpreting the terms of a CBA, allowing suit base on the state rights does not undermine the purpose of section 301 preemption: guaranteeing uniform interpretation of terms in collective bargaining agreements." *Miller*, 850 F.2d at 545-546. Thus, preemption depends on whether a state law claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp.*, 471 U.S. at 213.

> "In deciding whether a state law is preempted under section 301, therefore, a court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provision of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is "no."

*Miller*, 850 F.2d at 545.

Here, Defendants argue that Plaintiff's second and third causes of action are preempted by Section 301 of the LMRA. Defendants argue that Plaintiff's second claim for relief based on the doctrine of reasonable expectations depends on reading and interpreting the Memorandum Agreement between Plaintiff and the Union. However, at least part of Plaintiff's state law reasonable expectations claim is based on the course of business over the years between Plaintiff and Defendants both before and after the Memorandum Agreement was signed. (Doc. 1 at 5-6). Plaintiff is therefore basing its reasonable expectations claim, at least in part, on the parties' course of business, not on the terms of the agreement. Moreover, Defendants fail to fully analyze the *Miller* considerations cited above and instead rely only on general standards for preemption pursuant to Section 301. Defendants, for example, do not even address "whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract." *See Miller*, 850 F.2d at 545. Defendants' limited analysis fails to establish that Section 301 preempts Plaintiff's claim for relief based on reasonable expectations. Their request to dismiss this claim will be denied.

Defendants also argue preemption with regard to Plaintiff's third cause of action, that Defendants are barred by the statute of limitations from demanding payments from Plaintiff.  Defendants argue that determining when claims accrued requires consideration of the terms of the agreement.  Again, however, the Court finds that Defendants have failed to demonstrate to the Court's satisfaction that Plaintiff's third cause of action should be dismissed on preemption grounds.  Defendants failed to specifically address the *Miller* considerations as they pertain to this cause of action. Defendants' very limited analysis is therefore insufficient for the Court to dismiss this claim.

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(3), (6), (7), or, In the Alternative, to Stay Action (Doc. 14) is **DENIED**.

**Dated** this 2nd day of August, 2017.

_____
Honorable Diane J. Humetewa
United States District Judge

- 10 -