James E. Holland, Jr. (021826)
Javier Torres (032397)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email:  james.holland@stinson.com
        javier.torres@stinson.com
Attorneys for HKB, Inc., dba Southwest Industrial Rigging

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging, | 2:16-cv-03799-PHX-DJH (Lead Case) 2:17-cv-00198-PHX-DJH |
| Plaintiff, v. | **JOINT CASE MANAGEMENT REPORT** |
| Board of Trustees for the Southwest Carpenter's Southwest Trust; et al., | |
| Defendants. | (Assigned to the Honorable Diane J. Humetawa) |
| Board of Trustees for the Southwest Carpenter's Southwest Trust; et al., | |
| Plaintiffs, v. | |
| HKB, Inc., an Arizona Corporation, dba Southwest Industrial Rigging, et al., | |
| Defendants. | |

## I.     LIST OF THE PARTIES IN THE CASE

**Plaintiff(s):** HKB, Inc., dba Southwest Industrial Rigging ("Southwest").

**Defendant(s):** Carpenters Southwest Administrative Corporation and Board of
Trustees for the Southwest Carpenter's Southwest Trust (collectively, the "Carpenters
Trusts" or "Defendants").

///

1

**II.      NATURE OF THE CASE**

2

      **A.      Plaintiff's Statement of the Case.**

3       The Funds have demanded that Southwest make payments to the Funds pursuant

4 to a document that Southwest never agreed to be bound by.  Specifically, the Funds seek

5 payments from Southwest pursuant to a document titled "Southwest Regional Council of

6 Carpenters – Carpenters Memorandum Agreement 2012-2016" (the "Memorandum").

7 The Memorandum was signed by the Funds and by Tom Allen.  At the time, Allen was a

8 low-level Southwest employee who did not have authority to sign such documents for

9 Southwest.  Prior to Allen's signing of the Memorandum, Southwest made it known to

10 Allen that Allen did not have authority to bind Southwest to such contracts. Allen was

11 only a salesman for Southwest, so the Funds had no reason to believe that Allen was

12 authorized to sign the Memorandum on behalf of Southwest. Subsequent to Allen's

13 signing of the Memorandum, and still unaware that Allen had signed the Memorandum,

14 Southwest reiterated to Allen that Allen did not have authority to bind Southwest by

15 signing such contracts on Plaintiff's behalf. The Memorandum purports to incorporate,

16 by reference, other documents (referred to in the Memorandum as "Agreement[s]" and

17 "Master Labor Agreement[s]"), and purported to include "any amendments

18 modifications, and extensions" of such documents. Upon information and belief, these

19 documents were never provided to Allen, nor were they provided to Southwest.

20       Southwest performs construction-related maintenance and repair work at the Palo

21 Verde Nuclear Generating Station (the "Power Plant") twice a year for 4-6 weeks at a

22 time. Southwest had previously used carpenters provided by the Funds to help perform

23 some of the maintenance and repair work at the Power Plant, but Southwest had never

24 been required to sign the Memorandum or any document like it.

25       Subsequent to Allen's signing of the Memorandum, and while Southwest was still

26 unaware that Allen had signed the Memorandum, Southwest used carpenters provided by

27 the Funds to perform temp work at the Power Plant.

28

CORE/3008422.0002/142570500.1

1    Consistent with past practices, Southwest paid the Funds for all services that were

2    rendered by the carpenters, including funds for the carpenters' health-care, training,

3    vacation, and pension funds.

4    Beginning in November, 2015—several years after Southwest first began hiring

5    and paying for services provided by the Funds' carpenters (and more than two years after

6    Allen signed the Memorandum)—the Funds purported to perform an "audit" regarding

7    Southwest's payments to the Funds.

8    As a result of the Funds' "audit," the Funds demanded that Southwest make

9    additional payments in excess of $490,000, for various health-care, training, vacation, and

10   pension funds. This payment demand was not based upon any work performed by the

11   Union's carpenters. Rather, the Funds' demand was based solely upon services performed

12   by the Southwest's own employees.

13   Southwest's employees were not members of the Union and had no affiliation with

14   the Union. Nevertheless, the Funds claimed that one of the documents incorporated into

15   the Memorandum says Southwest must pay the Funds' health-care, training, vacation, and

16   pension funds for all work performed by Southwest's employees even though the

17   employees are not Union members and do not receive Union benefits. In other words, the

18   Funds claim that because Southwest hired Union carpenters for temporary work at the

19   Power Plant, Southwest is required to pay the Funds' health-care, training, vacation, and

20   pension funds for all work performed year round by Southwest's non-union employees.

21   Neither Southwest nor its employees will receive any benefit from the health-care,

22   training, pension, and vacation plans that the Funds claim Southwest must pay for.

23   During the time that Southwest used carpenters provided by the Union, the Funds

24   never brought to Southwest's attention any expectation that Southwest was liable for any

25   of the payments that the Funds ultimately demanded as a result of the "audits."

26   The Funds' demand by itself actually exceeds the value of all services provided by

27   the Union carpenters for that time period. Thus, the purported obligation to pay health-

28

3

1  care, training, vacation, and pension plans for all Southwest's employees actually

2  compounds Southwest's costs for Union workers by multiples, making it so that Union

3  carpenters cost far more than they are worth.

4        Southwest has fully paid the Funds for all sums attributable to work performed by

5  Union carpenters, so Southwest owes no other money to the Funds.

6        Accordingly, Southwest seeks declarations that: the Memorandum and its

7  accompanying documents are not enforceable against Southwest because Southwest did

8  not agree to the terms in the Memorandum; that the Memorandum's purported

9  requirement for Southwest to pay the Funds' health-care, training, vacation, and pension

10 funds for work performed by Southwest's full-time permanent employees is

11 unenforceable because it exceeds Southwest's reasonable expectations; that Southwest

12 has no present or future obligations under the Memorandum; and that the Funds' claim is

13 barred by Arizona's statute of limitation.

14        **B.      Defendants' Statement of the Case.**

15       The Carpenters Southwest Administrative Corporation and the Board of Trustees

16 For The Carpenters Southwest Trusts (collectively "Carpenters Trusts") filed this action

17 on October 28, 2016 seeking ERISA benefit contributions owed under the collective

18 bargaining agreement ("CBA") H K B Inc. ("H K B") executed with the Southwest

19 Regional Council of Carpenters ("SWRCC") on or about August 22, 2013.  Pursuant to

20 the CBA, H K B became a signatory to the Southwest Carpenters Health and Welfare

21 Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters Training Fund,

22 and the Southwest Carpenters Vacation Trust, along with any amendments to such

23 agreements.

24       The CBA was signed by Tom Allen, H K B's Manager of Construction, for

25 H K B after at least three meetings with SWRCC representatives at H K B's offices.  In

26 one of the meetings, both Mr. Allen and Xonia Ornelas participated on behalf of H K B.

27 (At the meeting that she participated in, Ms. Ornelas stated that her title was "HR

28

4

1   Manager" or a similar title.)  In the course of these meetings, Mr. Allen and Ms. Ornelas

2   affirmed that Mr. Allen had authority to bind H K B to the CBA.  Likewise, they affirmed

3   that H K B wished to enter into a full memorandum agreement instead of a single project

4   agreement.

5        For approximately three years, H K B used the services of SWRCC-represented

6   carpenters and filed reports with Carpenters Trusts concerning hours worked by these

7   carpenters, as required by the agreements.

8        Carpenters Trusts completed an audit of H K B's contributions to the Trust Funds,

9   which showed that its Trust Funds contributions were delinquent. On March 29, 2016,

10   Carpenters Trusts' counsel sent a demand letter sent to H K B's counsel.  On April 27,

11   2016, nearly three years after H K B entered into the CBA, H K B's counsel sent letters

12   to Carpenters Trusts' counsel and to the SWRCC, which asserted that H K B's "former

13   sales representative, Tom Allen, may have signed a document... Mr. Allen did not have

14   actual, implied or apparent authority to bind Southwest Industrial Rigging ..." As H K B

15   refused to pay the delinquent ERISA contributions, Carpenters Trusts filed the instant suit

16   on October 28, 2016.  Carpenters Trusts seek damages, inter alia, for failure to pay fringe

17   benefit contributions based upon the CBA.

18        H K B entered into a full memorandum agreement.  Accordingly, H K B is required

19   to pay benefit contributions for any of its workers who performed services covered by the

20   Agreements.  As H K B accepted this contractual obligation, its use of non-union workers

21   does not relieve it from its obligation to make these contributions.

22   **III.   JURISDICTIONAL BASIS OF THE CASE**

23        The issue of this Court's jurisdiction has already been litigated and decided by the

24   district court in California as well as this Court. This Court has jurisdiction over

25   Southwest's claims under 28 U.S. Code § 2201 and 28 U.S.C. § 1391(b).

26   **IV.   PARTIES WHICH HAVE NOT BEEN SERVED OR WHICH HAVE NOT FILED AN ANSWER**

27

28

5

1   The parties are unaware of any additional parties who have not been served or who

2   have not yet filed an answer or otherwise made an appearance.

3   **V.      EXPECTED ADDITIONAL PARTIES OR PLEADING AMENDMENTS**

4   Currently, the parties do not anticipate adding additional parties or otherwise

5   amending the pleadings.

6   **VI.     CONTEMPLATED MOTIONS AND STATEMENT OF ISSUES TO BE
7           DECIDED**

8   Southwest anticipates filing an early summary-judgment motion to establish that

9   it is entitled to the relief it seeks as a matter of law. (See Section II(A) above.)

10   The Carpenters Trusts anticipate filing a motion for summary judgment.    The

11   Carpenters Trusts anticipate that some discovery will need to be completed prior to filing

12   a motion for summary judgment; hence, it is anticipated that this motion would be filed

13   in the June 2019 timeframe.

14   **VII.    ASSIGNMENT TO A UNITED STATES MAGISTRATE JUDGE UNDER
15           28 U.S.C. § 636(c)**

16   The parties are unwilling to consent to reference to a Magistrate Judge under 28

17   U.S.C. § 636(c).

18   **VIII.  STATUS OF RELATED CASES**

19   The parties are unaware of any related cases pending before other judges of this

20   Court or before other courts.

21   **IX.     EXCHANGE OF INITIAL DISCLOSURES UNDER RULE 26(a)**

22   The parties will exchange Fed.R.Civ.P. 26(a) Initial Disclosures on or before:

23   October 15, 2018.

24   **X.      ISSUES RELATING TO ESI DISCLOSURE OR DISCOVERY**

25   Both parties have disclosed several categories of electronically stored information.

26   During the parties' Rule 26(f) conference, the parties discussed how to filter and produce

27   the relevant ESI. The parties agreed to work together to determine search parameters

28

6

1  including search terms, parties, and dates to filter obtain the relevant ESI. The parties are

2  working together to determine the reasonable form(s) in which to produce the various

3  types of ESI in this case.

4      The parties are not aware of any ESI.

5  **XI.   ISSUES RELATING TO PRIVILEGE OR WORK PRODUCT**

6      At this time, the parties have not identified any issues related to claims of privilege

7  or work product.

8  **XII.   NECESSARY DISCOVERY**

9      The parties anticipate utilizing written discovery under Fed. Rs. Civ. P. 33, 34 and

10  36, as well as depositions of Southwest, Union, and Funds personnel.  The parties also

11  anticipate serving subpoenas for documents and testimony on certain third party

12  witnesses. The parties do not believe it is necessary to conduct discovery in phases or to

13  change the default discovery limitations under the Federal Rules of Civil Procedure

14  and/or the Local Rules, including the default time limitation of seven hours for each

15  deposition.

16      **a.   The extent, nature, and location of discovery anticipated by the parties;**

17      Southwest intends to take seek discovery regarding: Union contracts with Southwest, the

18  Funds' audit; the signing of the Memorandum by Allen and by the Union.

19      The Carpenters Trusts anticipate conducting discovery regarding H K B's corporate

20  structure, policies and procedures, and related matters.  The Carpenters Trusts also anticipate

21  conducting discovery regarding Tom Allen's corporate position and authority.

22      **b.   The scope of discovery and whether discovery should be conducted in phases**

23  **or should be limited to focus on particular issues;**

24      N/A

25      **c.   Suggested changes, if any, to the discovery limitations imposed by the Federal**

26  **Rules of Civil Procedure;**

27      N/A

28

7

**d.** **The number of hours permitted for each deposition, unless modified by agreement of the parties.** *See* **Fed.R.Civ.P. 30(d)(1).**

Unless otherwise stipulated or ordered by the court, a deposition is limited to one (1) day of seven (7) hours.

## XIII.   PROPOSED DEADLINES

**A.** **Fact Discovery including Supplementing Discovery Responses:**

The parties shall complete fact discovery including final supplementation of discovery responses on or before **May 24, 2019**.

**B.** **Expert Witnesses Disclosures:**

The Parties do not intend to utilize expert witnesses at this time.

**C.** **Expert Depositions:**

N/A

**D.** **Dispositive Motions:**

The parties shall file dispositive motions on or before **July 26, 2019**.

**E.** **Good Faith Settlement Talks:**

The parties shall engage in face-to-face good faith settlement talks on or before **September 27, 2019**.

## XIV.   JURY TRIAL REQUEST

The Parties have not requested a trial by jury.

## XV.   ESTIMATED LENGTH OF TRIAL

The parties anticipate that the trial will require 3 to 5 trial days.

## XVI.   PROSPECTS FOR SETTLEMENT

The prospects for settlement are currently unclear, but the parties anticipate engaging in a settlement conference after some discovery has been completed and request that the Court refer the case to a settlement judge to conduct a settlement conference in April 2019.

8

1    RESPECTFULLY SUBMITTED  24th  day of September 2018.

2                                           **STINSON LEONARD STREET LLP**

3

4                                    By:   */s/ James E. Holland, Jr.*
                                           James E. Holland, Jr.
5                                          Javier Torres
                                           1850 North Central Avenue, Suite 2100
6                                          Phoenix, Arizona 85004-4584
                                           Attorneys for Southwest Industrial Rigging
7

8                                           **DECARLO & SHANLEY**

9
                                           */s/ James E. Holland, Jr. on behalf of*
10                                   By:   *Thomas Davis (with permission)*
                                           Daniel Shanley
11                                         Thomas Davis
                                           533 South Freemont Avenue, Ninth Floor
12                                         Los Angeles, California 90071-1706
                                           Attorneys for Plaintiffs, Carpenters
13                                         Southwest Administrative Corporation and
                                           Board of Trustees for the Carpenters
14                                         Southwest Trusts

15

16                        **CERTIFICATE OF SERVICE**

17        I hereby certify that on September 24, 2018 I caused the foregoing document to

18   be filed electronically with the Clerk of Court through ECF; and that ECF will send an

19   e-notice of the electronic filing to:

20        Daniel Shanley
21        Thomas Davis *(admitted pro hac vice)*
          DeCarlo & Shanley
22        533 South Freemont Avenue, Ninth Floor
          Los Angeles, California 90071-1706
23        dshanley@deconsel.com
          tdavis@deconsel.com
24        Attorneys for Plaintiffs, Carpenters Southwest
25        Administrative Corporation and Board of Trustees
          for the Carpenters Southwest Trusts
26

27                                  */s/ C. Roundtree*

28

                                           9
CORE/3008422.0002/142570500.1